78 So.2d 92 (1955)
James A. LANIGAN, sometimes known as James A. Finnigan, and Irene E. Finnigan, Petitioners,
v.
Sarah C. LANIGAN, Respondent.
Supreme Court of Florida. Special Division A.
February 16, 1955.
*93 Warren, Klein & Moore, Miami Beach, and Baker & Baker, Clearwater, for petitioners.
Lovelace, Earle & Deal, St. Petersburg, for respondents.
ROBERTS, Justice.
We here review, on certiorari, an order of the lower court denying the defendants' motion to dismiss the plaintiff's complaint. The complaint was filed by plaintiff, a Rhode Island resident, against the defendants, Florida residents who are purportedly husband and wife, to have declared null and void a divorce decree which the defendant-husband had obtained in Nevada against the plaintiff some years ago, and for other relief which will be referred to hereafter. The factual background, as shown by the allegations of the complaint, is as follows:
Plaintiff and the defendant-husband ("defendant" hereafter) were married in 1918 in Rhode Island and lived together there until 1937. In that year, defendant filed suit for divorce against plaintiff, she counterclaimed for a divorce from bed and board, and a decree was entered in her favor awarding her $10 per week for the support of herself and the children of the marriage. The defendant then went to Nevada and filed suit for divorce there against plaintiff. In his first suit, service upon plaintiff (who was, of course, defendant in that suit) was obtained by publication and mailing of notice to plaintiff. Plaintiff appeared in the cause and filed certain defenses therein. This suit was then dismissed by defendant and another suit filed in a different county. Service in the second suit was by publication and personal service of the summons on the plaintiff in Rhode Island. A decree was entered in the second suit in June of 1938. Plaintiff alleges in her complaint that the Nevada divorce decree is void because (1) the affidavit of one Philip Brandt that he had personally served a summons in the cause upon plaintiff in Rhode Island was "false and untrue", that she had no notice of the suit and thus had no opportunity to defend it; and (2) "the defendant herein was never a bona fide legal resident of the State of Nevada because of the fact that he went to the State of Nevada for the sole purpose of obtaining a divorce from this plaintiff and that he did not have the intention of making the State of Nevada his home as required by the laws of the State of Nevada."
In the meantime, in 1940 and again in 1953, the plaintiff had, in Rhode Island, obtained modifications of the original 1937 separate maintenance decree  the 1953 decree awarding her $50 per week as support for herself. It was alleged that the 1953 *94 decree was entered upon personal service on the defendant in Hillsborough County, Florida, and that a judgment for arrearages under such decree in the amount of $2,100 had been entered by the Rhode Island court. It was also alleged that the defendant had, since the entry of the Nevada divorce decree in 1938, entered into two contracts of marriage, the first of which was dissolved by divorce in 1946 and the second of which is purportedly still existing; and that the defendant and his purported present wife own several parcels of real estate as tenants by the entirety.
The plaintiff asked the Florida court to declare that the Nevada divorce decree was invalid and a nullity and, also, that it establish and enforce the Rhode Island judgment for alimony arrearages as a decree of the Florida court.
The defendant filed a motion to dismiss containing two grounds: (1) improper venue, and (2) that the court had "no jurisdiction of the subject matter of the cause of action attempted to be stated in the amended bill of complaint." Only the latter ground is argued here.
It is clear that the lower court did not err in denying the motion to dismiss based on the ground that the court had no jurisdiction of the subject matter of the suit. Since the decision of this court in Sackler v. Sackler, Fla. 1950, 47 So.2d 292, 18 A.L.R.2d 856, it is established that "our equity courts are open to nonresident wives for the enforcement by equitable processes of final decrees for alimony for the wife and support money for the children awarded by the courts of other states", Haas v. Haas, Fla. 1952, 59 So.2d 640, 642, subject, of course, to whatever equitable defenses, cognizable in this state, the defendant may wish to interpose. Haas v. Haas, supra.
Nor can it be successfully contended that this state is required to give full faith and credit to divorce decrees of a sister state which are void for want of jurisdiction or by reason of fraudulent procurement. Haas v. Haas, supra, 59 So.2d 640; Williams v. State of North Carolina, 1945, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366; Nelson on Divorce and Annulment, Sec. 33.76. See also the annotation in 1 A.L.R.2d at page 1385, for cases from other jurisdictions decided since the decision in the Williams case, supra. As stated by Nelson, ibid., Sec. 33.76:
"Although the courts of one state have no jurisdiction over the judicial proceedings of another, and cannot alter their judgments or decrees, a suit may be maintained in equity for the purpose of obtaining an adjudication of the nullity or invalidity of a sister-state divorce that is void for want of jurisdiction or by reason of fraudulent procurement, which will be effective in the state where such adjudication is made."
The lower court did not, then, err in holding that it had jurisdiction of the subject matter of both phases of plaintiff's suit.
The question of whether the plaintiff stated a cause of action on that phase of her case which attacks the validity of the Nevada divorce decree is another matter and is not presented to this court in these proceedings. However, to save the time of the court below and time and expense to the litigants on the assumption that the defendants will next attack the complaint for failure to state a cause of action on this phase of the case, it should be noted that the allegations of the complaint as to defendant's lack of domicile in Nevada are, to say the least, meager (the entire content of the complaint in this respect is quoted above) and, when construed most strongly against the pleader, could well be interpreted as failing to allege that the defendant did not acquire a bona fide domicile in Nevada. The complaint alleges that he was never a bona fide resident of Nevada because he went there for the sole purpose of obtaining a divorce without intending to make it his home. The fact that he went there for that sole purpose does not necessarily mean that he did not thereafter become a bona fide resident of Nevada.
Nor has the plaintiff stated a cause of action for fraudulent procurement *95 of the divorce, based on her allegations as to the defective personal service. In the first place, it is not alleged that the defendant knew that Brandt's affidavit of service was "false and untrue," nor that he fraudulently conspired with Brandt to make a false affidavit in order to prevent the plaintiff from defending the Nevada suit. From all the circumstances, as heretofore recounted, it might be implied that such was the case; but we think that the pleader is required to do more than leave it to the court to imply the fraudulent conduct upon which he or she is relying to invalidate a decree. In the second place, there is no allegation that the Nevada statutes require that a nonresident defendant be personally served in the state of his or her residence and that a decree would be void until such service were actually obtained. In a case of this kind, the question is not what credit, validity, and effect such a decree would have in this state, but that which it would have in the state where it was pronounced; only those pleas which would be good to a suit thereon in such state  and no others  can be pleaded in any other court in the United States for the purpose of attacking the validity or effect of such judgment. Hampton v. McConnel, 3 Wheat. 234, 4 L.Ed. 378.
In Keena v. Keena, 1928, 222 Mo. App. 825, 10 S.W.2d 344, 346, where the wife attacked an Illinois divorce in a Missouri court on the ground that the husband had made a false affidavit as to her residence, the court said:
"The fundamental rule is that where, as here, statutes of a sister state are relied on as the basis of a cause of action, they must be pleaded with such distinctness that the court may determine their effect, and the facts which constitute their violation must also be pleaded. * * * Consequently, since plaintiff chose to go to trial upon a petition in which the statutes in controversy were not pleaded, and since the same were the basis of her cause of action, so far as concerned proof of want of jurisdiction in the Illinois court to render the divorce decree, they were inadmissible in evidence, and were properly excluded by the court, as were also the decisions of the courts of that state construing such statutes."
While this court and the lower court are required to take judicial notice of the "common law and statutes of every state * * *", Section 92.031, Fla. Stat., F.S.A., we do not think that such evidence, in the form of judicial notice, will supply the want of pleading in plaintiff's bill.
Since we have written at some length on matters which, while not actually before us at this time, are so glaringly apparent from the record that we felt impelled to comment on them in order to save the time and money of the litigants, we are constrained to add one more comment on another aspect of this litigation, that is, the laches of the plaintiff in waiting 16 years to attack the validity of the Nevada divorce decree.
It goes without saying that, during these 16 years, the defendant has held himself out as a single man  or, at least, as divorced from the plaintiff; he has entered into two marriage contracts with women who, from all that is shown or can be inferred from the record, were without knowledge as to any taint in his Nevada divorce decree; he has no doubt engaged in many commercial transactions with, and may have executed deeds of conveyance to, persons who were entitled to rely on the validity of the Nevada decree. There is nothing in the public policy of this state which prevents the application of the doctrines of laches and estoppel in proceedings of this kind. In fact, it is our opinion, as stated in Goodloe v. Hawk, 1940, 72 App.D.C. 287, 113 F.2d 753, 757, that "* * * the interest of the state in many situations may lie with recognition of such divorces and preservation of remarriages rather than a dubious attempt to resurrect the original." The court in that case also made the cogent observation that "From a pragmatic viewpoint, judicial invalidation of irregular foreign divorces and attendant remarriages, years after both events, is a less than ineffective sanction against an institution whose charm lies in its immediate respectability."
*96 No rule is better settled than that equity aids the vigilant and not the indolent. While the conduct of the defendant in fraudulently obtaining a Nevada divorce, if he did, is certainly reprehensible, the conduct of the plaintiff in standing idly by for a long period of time and permitting innocent persons to be deceived and misled in reliance on an apparently valid decree, has something of the same quality; it is, at least, sufficient to bar her suit under the doctrine of laches, in the absence of some convincing explanation which will excuse her failure to prosecute her action to invalidate the decree until this late date. If such an explanation is not forthcoming, we do not see how the court could conscionably, under the facts shown by the record now before this court, invalidate the Nevada divorce decree.
For the reasons stated early in this opinion, certiorari should be and it is hereby
>Denied.
MATHEWS, C.J., and TERRELL and BUFORD, JJ., concur.