561 So.2d 565 (1990)
Oscar David GIBSON a/K/a James Clinton Parker, Petitioner,
v.
Patricia Gibson BENNETT, Respondent.
No. 71038.
Supreme Court of Florida.
May 10, 1990.
*566 Mark P. Kelly of Freeman & Lopez, P.A., Tampa, for petitioner.
Patricia Ann Bennett, Springfield, Va., pro se.
Joseph R. Boyd and William H. Branch of Boyd & Branch, P.A., Tallahassee, and Chriss Walker, Dept. of Health and Rehabilitative Services, Tallahassee, amicus curiae for Dept. of Health and Rehabilitative Services.
Louis F. Hubener, Asst. Atty. Gen., Tallahassee, amicus curiae for Robert A. Butterworth, as Atty. Gen. of the State of Fla.
Kathy G. Chinoy of the Law Offices of Chinoy & Soud, Jacksonville, and Sally F. Goldarb, New York City, amicus curiae for NOW Legal Defense and Educ. Fund.
June K. Inuzuka, Staff Atty., Washington, D.C., amicus curiae for Women's Equity Action League.
John A. Rupp, Sr. Asst. Atty. Gen., Richmond, Va., amicus curiae for Mary Sue Terry, as Atty. Gen. of the State of Va.
KOGAN, Justice.
We have for review Bennett v. Gibson, 510 So.2d 1234, 1237 (Fla. 2d DCA 1987), in which the district court certified the following question of great public importance:
DO THE CIRCUIT COURTS OF THIS STATE HAVE JURISDICTION TO ENFORCE A FOREIGN JUDGMENT FOR ARREARAGES OF ALIMONY OR CHILD SUPPORT BY MEANS OF EQUITABLE REMEDIES INCLUDING CONTEMPT?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the affirmative and remand to the district court.
Patricia Gibson Bennett and Oscar David Gibson were married in Virginia on December 26, 1964. On August 28, 1968, when Bennett was four months pregnant with their third child, Gibson abandoned Bennett and their two infant children.
Gibson was arrested in Virginia on January 15, 1969, after failing to make child support payments. He was ordered to pay $50.00 per week as child support beginning on January 20, 1969. After making two *567 payments, Gibson disappeared. He was last seen by his wife in March 1969. Gibson then left Virginia and never returned. Bennett obtained a final divorce decree in Virginia on June 20, 1972, on the grounds of desertion and abandonment.
In 1985, Gibson was discovered in Pasco County, Florida, living under the name of James Clinton Parker.[1] A writ of ne exeat was issued for his arrest in Hillsborough County in January 1985. After spending two days in the county jail, the writ was vacated on the ground that there was no evidence Gibson would attempt to flee the state of Florida.
On June 6, 1985, the Virginia district court issued a rule to show cause to Gibson regarding arrearages in child support. Gibson filed an answer, but failed to appear at the July 11, 1985 hearing on the rule. The Virginia court reduced the arrearages to a final judgment in the amount of $106,073.58. The $50.00 per week child support has continued to accrue since July 11, 1985. The Virginia judgment was not appealed.
The foreign judgment was filed with the Clerk of the Circuit Court in Pasco County on December 23, 1985, and notice of the recording of the judgment was mailed to Gibson pursuant to section 55.505, Florida Statutes (1985). Gibson has never contested the jurisdiction of the Virginia court, nor the validity of the judgment. Bennett filed a motion seeking to enforce the judgment by invoking the equitable powers of the Pasco County circuit court on August 21, 1986. Bennett's motion was denied solely on the trial judge's ruling that he had no jurisdiction to enforce the judgment by contempt or by the exercise of any equitable powers of the Florida court.
On appeal the Second District reversed the trial court's ruling on the authority of Sackler v. Sackler, 47 So.2d 292 (Fla. 1950), and its progeny and certified the question now before this Court.
As a matter of public policy, the state of Florida imposes a statutory duty upon parents to support their children. § 61.13(1)(a), Fla. Stat. (1987). This policy stems from the unique moral character of a support obligation and the stated objective that responsibility for maintenance of the family should not shift to the state. McDuffie v. McDuffie, 155 Fla. 63, 19 So.2d 511, 513 (1944).[2] When a Florida court structures a child support award, it has considered the needs of the children and has assigned the responsibility of support to the parent who is most able to provide that support. Once the court has issued a support order, it is empowered to enforce the obligation by equitable means.
Enforcement of foreign support decrees by equitable means was first mandated in Florida in McDuffie. This Court recognized that a Florida court of equity could exercise jurisdiction over a cause of action arising from a foreign decree for spousal support brought against a husband who had become a Florida citizen. To reach this result, the Court relied on the leading case of Fanchier v. Gammill, 148 Miss. 723, 114 So. 813 (1927). In Fanchier, the Supreme Court of Mississippi concluded that a suit in equity could be maintained in the state of Mississippi based on a foreign support decree. The Mississippi decision was predicated on two grounds: the public policy requiring a husband to support his wife and children and the power of enforcement by attachment and contempt proceedings inherent in judgments for support.
In Sackler, this Court went a step further and held that a nonresident wife may seek enforcement in Florida of a support decree which had been reduced to a foreign judgment by the same equitable remedies, including contempt proceedings, available to enforce a local decree. In deciding this issue, the Court noted that the question of whether equitable remedies could be used to enforce a final decree for support had *568 been settled in McDuffie. The Sackler court acknowledged the sound public policy underlying a judgment for alimony and applied the rule of McDuffie to the facts before it.
Later, this Court reaffirmed its decision in Sackler in the case of Haas v. Haas, 59 So.2d 640 (Fla. 1952). In Haas a former wife who had been awarded alimony in New York and later obtained a New York judgment for past due payments brought suit in a Florida court of equity to enforce the New York judgment. After citing the rule announced in Sackler, this Court held that a nonresident wife may seek enforcement of a money judgment based on a final decree for support either in a court of law or a court of equity. Haas, 59 So.2d at 643. Thus, it is well established in Florida that a nonresident custodial parent may seek enforcement by equitable processes of a foreign support decree or a foreign support decree that has been reduced to a money judgment. Sackler; Haas. See also Lanigan v. Lanigan, 78 So.2d 92 (Fla. 1955); Grotnes v. Grotnes, 338 So.2d 1122 (Fla. 4th DCA 1976); West v. West, 301 So.2d 823 (Fla. 2d DCA 1974); Miller v. Miller, 105 So.2d 386 (Fla. 1st DCA 1958), cert. quashed, 112 So.2d 832 (Fla. 1959).
Gibson contends, however, that the rule laid down in Sackler is no longer the prevailing law in Florida. Gibson's assertion is based on his view that Sackler and its progeny have been receded from in Sokolsky v. Kuhn, 405 So.2d 975 (Fla. 1981), and Lamm v. Chapman, 413 So.2d 749 (Fla. 1982). Gibson argues that these cases preclude the use of equitable remedies, including contempt, to enforce a support obligation once the obligation has been reduced to a money judgment. Gibson concludes that reducing a support decree to a money judgment transforms the decree to an ordinary judgment debt, enforceable only by an action at law. He points out that contempt would have been available as a remedy if Bennett had tried to enforce the support decree issued by the Virginia court. However, Gibson asserts that once Bennett obtained a money judgment, she acquired different rights accompanied by different remedies, which do not include enforcement of the judgment by contempt.
To support his contention, Gibson relies principally upon language in Lamm explaining generally the rights of parties seeking to enforce child support obligations:
We note that, although contempt may be the most generally used means of enforcing the child support obligation, it is not the only remedy available to the state or to the child's custodian. Either could obtain a judgment for an arrearage of child support. In the event that such a judgment is obtained, it constitutes a judgment debt upon which traditional enforcement remedies, including liens and levies, may be utilized. The contempt power of the court is no longer available to enforce the child support obligation for those arrearages which have been reduced to a judgment debt for which execution may issue, regardless of whether the judgment was obtained by the department or by the custodial parent.
413 So.2d at 753.
We find Gibson's reliance on Sokolsky and Lamm to be misplaced. In Sokolsky, this Court was asked to determine whether section 61.12(1), Florida Statutes (1979), permitting garnishment of wages of the head of a household to enforce an order issued by a Florida court for child support, applies in those cases in which child support arrearages have been reduced to a final money judgment. The Court held that the provisions of section 61.12(1) do not apply to create an exception to the exemption from garnishment provided by section 222.11, Florida Statutes (1979), for the wages of a head of a family residing in Florida. The Court concluded that a money judgment for support arrearages was not the equivalent of an order "of the court of this state for alimony, suit money, or child support" within the meaning of section 61.12, and therefore no exception applied under the circumstances. Sokolsky, 405 So.2d at 977.
*569 In Lamm, this Court held that when a custodial parent accepts public assistance money for the support of a dependent child, the Department of Health and Rehabilitative Services can seek reimbursement of the payments from the support obligated parent by asserting the custodial parent's right to child support through any appropriate remedy available to the child's custodian, including contempt. The Court concluded that by statute, the state is empowered to act in the place of the public assistance recipient in seeking enforcement of the child support obligation. Lamm, 413 So.2d at 752.
The issues addressed in Lamm and Sokolsky are dissimilar from the issue presented in Sackler. In neither Lamm nor Sokolsky did the Court address or discuss whether a money judgment for child support could be enforced by contempt proceedings. Nor did Sackler, Haas, or Lanigan address the issue considered in either Sokolsky or Lamm. Further, the quoted passage from Lamm upon which Gibson relies was considered by the district court below and was correctly characterized as dicta. Bennett, 510 So.2d at 1237.
Moreover, in 1986, acting under guidelines of the federal Child Support Enforcement Amendments of 1984, Pub.L. No. 98-378, 98 Stat. 1305 (codified as amended in scattered sections of 42 U.S.C.A. (1984)), the legislature substantially amended chapter 61, Florida Statutes, which deals in pertinent part with child support. These amendments were designed, not only to conform with the federal requirements, but to increase the effectiveness of Florida's child support enforcement program and to directly address the goal of providing greater assurance that support payments will be made. Staff of Fla.H.R. Comm. on Judiciary, CS for HB 1313 (1986) Staff Analysis 1-2 (rev. Jan. 31, 1986) (on file with committee). In addition to providing for the establishment of liens as a method of enforcement, section 61.1352, Florida Statutes (1987), the legislature adopted section 61.17(3), Florida Statutes (1989), which provides:
Alimony and child support; additional method for enforcing orders and judgments; costs, expenses. The entry of a judgment for arrearages for child support, alimony, or attorney's fees and costs does not preclude a subsequent contempt proceeding or certification of a IV-D case for intercept, by the United States Internal Revenue Service, for failure of an obligor to pay the child support, alimony, attorney's fees, or costs for which the judgment was entered.
The language of this section, adopted subsequent to Lamm and Sokolsky, expressly provides for the use of contempt proceedings, in addition to other remedies available, to enforce a judgment for support arrearages. While section 61.17(3) took effect after the events in this case, the statute merely embodies the preexisting public policy that equitable remedies, including contempt, are available to enforce a judgment for support arrearages. We decline to construe the passage from Lamm as a departure from the rule announced in Sackler nor can it be read as precluding the use of equitable remedies to enforce support arrearages.
Establishing a support decree as a money judgment does not destroy the decree as an order to pay support nor is the obligation reduced to an ordinary judgment debt enforceable only at law. Likewise, relocation of a party to another state does not alter the character of the award. The purpose of the award remains the payment of support to the former spouse or the children regardless of its form or the location of the parties. Ostrander v. Ostrander, 190 Minn. 547, 252 N.W. 449, 450 (1934). A decree for support is different than a judgment for money or property: It is a continuing obligation based on the moral as well as legal duty of a parent to support his or her children. Sackler, 47 So.2d at 294 (quoting Rule v. Rule, 313 Ill. App. 108, 39 N.E.2d 379 (1942)). Because of this difference, a judgment for support should be enforced by more efficient means than ordinary execution at law. To hold that such a judgment can be enforced only by execution at law would amount to depriving a support award of its inherent power of enforcement by contempt. *570 McDuffie, 19 So.2d at 513. The courts have a duty to provide an effective, realistic means for enforcing a support order, or the parent or former spouse for all practical purposes becomes immune from an order for support. In our view, this duty includes enforcement of a judgment of support by equitable processes of the court because a remedy at law that is ineffective in practice is not an adequate remedy. For these reasons we reject Gibson's assertion that the use of equitable remedies is limited to those instances in which a support decree has not been reduced to a money judgment.
Gibson next argues that enforcement of a judgment for support by contempt violates the constitutional prohibition against imprisonment for debt found in article I, section 11 of the Florida Constitution.
Initially, we note that the United States Supreme Court has recognized that the obligation to pay support may be enforced by imprisonment for contempt without violating a constitutional prohibition against imprisonment for debt. Audubon v. Shufeldt, 181 U.S. 575, 21 S.Ct. 735, 45 L.Ed. 1009 (1901) (quoting Barclay v. Barclay, 184 Ill. 375, 56 N.E. 636 (1900)); Wetmore v. Markoe, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904). Although both of these cases involved bankruptcy proceedings, the question before the Court in each instance was whether an order for support constituted a debt that could be discharged in bankruptcy. In determining that a support decree was not such a debt, the Court distinguished an obligation to pay support from a debt arising from a business transaction or a contractual obligation stating:
[A] decree awarding alimony to the wife or children, or both, is not a debt which has been put into the form of a judgment, but is rather a legal means of enforcing the obligation of the husband and father to support and maintain his wife and children. He owes this duty, not because of any contractual obligation, or as a debt due to the wife, but because of the policy of the law which imposes the obligation upon the husband. The law interferes when the husband neglects or refuses to discharge this duty, and enforces it against him by means of legal proceedings.
Wetmore v. Markoe, 196 U.S. at 74, 25 S.Ct. at 174.
In Florida, imprisonment for debt is specifically prohibited by the Florida Constitution. Art. I, § 11, Fla. Const. However, it is well settled that the obligation to pay spousal or child support does not constitute a debt within the meaning of article I, section 11. State ex rel. Krueger v. Stone, 137 Fla. 498, 188 So. 575 (1939). Rather, a support obligation is viewed as a personal duty, not only to a former spouse or child, but to society generally. Bronk v. State, 43 Fla. 461, 31 So. 248 (1901). Thus, because the courts are enforcing a duty not a debt, enforcement of spousal or child support by contempt, under both federal and state law, is not a violation of Florida's constitutional prohibition against imprisonment for debt.
It must be understood, however, that enforcement of support payments by contempt is not absolute. Contempt for failure to pay support is civil contempt because its purpose is to obtain compliance from the person subject to an order of the court. In Bowen v. Bowen, 471 So.2d 1274, 1278 (Fla. 1985), this Court emphasized that civil contempt is appropriate only upon demonstration that the party in default has the present ability to comply with the purge provisions of the court order and avoid imprisonment. Because the original order or judgment directing a party to pay support is based on a finding that the party has the ability to pay, that order or judgment creates the presumption in subsequent proceedings that the party can pay. Id. The burden rests upon the defaulting party to produce evidence to dispel the presumption of ability to pay due to circumstances beyond his or her control and to prove there was no willful disobedience of the court order. Incarceration for civil contempt for nonpayment of a support obligation cannot be imposed absent a separate, affirmative finding by the trial court appearing on the record that the defaulting *571 party has the ability to comply with the purge conditions of the contempt order.[3]Id. at 1279. Thus, an individual's ability to pay from some available asset[4] is the "key to his cell." Pugliese v. Pugliese, 347 So.2d 422 (Fla. 1977). A nonpaying party who has the financial ability to pay can discharge the sentence imposed by doing what he or she has previously refused to do.
Finally, we turn to Gibson's argument that even if contempt proceedings are found to be proper to enforce payment of a judgment for support arrearages, the remedy is unavailable once the child attains the age of majority. For this proposition Gibson relies on two cases, Smith v. Morgan, 379 So.2d 1052 (Fla. 1st DCA 1980), and Wilkes v. Revels, 245 So.2d 896 (Fla. 1st DCA 1970). See also Schwarz v. Waddell, 422 So.2d 61 (Fla. 3d DCA 1982); Gersten v. Gersten, 281 So.2d 607 (Fla. 3d DCA 1973). In both first district cases, the court held that the trial court was without jurisdiction to enforce payment of support arrearages by contempt proceedings after a minor child has attained the age of majority.[5] The district court reasoned that contempt was not an appropriate remedy to enforce support arrearages because the purpose and justification for the use of contempt, namely ensuring the support of the minor child, expires when the child reaches majority. The first district concluded that only the right to enforce the judgment by ordinary remedies remains.
Support payments are imposed upon a parent because the trial court has determined the payments are necessary to provide for the needs of the child. When a support-obligated parent fails to make support payments, the responsibility for maintaining the child falls entirely upon the custodial parent. In many instances, the custodial parent cannot shoulder the additional financial burden that rightfully and lawfully belongs to the nonpaying parent. As a consequence, the family often suffers hardships that otherwise could be avoided, and in some cases they are forced to seek aid from the state. In any event, due to the delinquency of a nonpaying parent, money from a support-dependent parent's own funds or from the state has been expended to maintain the child during minority.
The purpose, in part, of support enforcement legislation is to ensure that parents, rather than the public, bear the responsibility for the support of their children while the children are minors. Section 61.17(3), Florida Statutes (1989), provides for the use of contempt proceedings, in addition to other remedies available, to enforce a judgment for support arrearages. However, nothing in the statute indicates whether *572 past due support payments may be collected through contempt proceedings after the child reaches majority.[6]
Upon emancipation of a minor child, the support-dependent parent is not magically reimbursed for personal funds spent nor debts incurred due to nonpayment of child support. Hardships suffered by a family do not disappear. A family's feelings of indignation from abandonment by the nonpaying parent or from past reliance on public assistance are not forgotten. Society's interest in ensuring that a parent meets parental obligations must not be overlooked simply because the child has attained the age of majority. The support obligation does not cease; rather it remains unfulfilled. The nonpaying parent still owes the money.
Today, support-dependent parents and the courts often experience great difficulty obtaining compliance with support orders while a child is a minor even though the remedy of contempt is available. If the courts lack the power to enforce child support orders through contempt proceedings after the child reaches majority, a nonpaying parent may escape his or her support obligation entirely, especially a parent with little or no property subject to attachment in an action at law. If a parent dependent on support is left with the less effective civil action, the nonpaying parent may be encouraged to hide assets or purposefully elude the court until the child attains age eighteen, preferring the civil action on a debt rather than a contempt proceeding. As this Court has previously stated, we have no desire to make this state a haven for those who wish to avoid their support obligations. Sackler v. Sackler, 47 So.2d at 294. Accordingly, we hold that a judgment for support arrearages is enforceable by contempt proceedings after a child has reached the age of majority. In our view, emancipation does not extinguish a support-obligated parent's responsibility to pay the past due support.
For the reasons expressed in this opinion, we answer the certified question in the affirmative and remand this cause for proceedings consistent with this opinion.
It is so ordered.
EHRLICH, C.J., and SHAW, BARKETT and GRIMES, JJ., concur.
OVERTON, J., concurs specially with an opinion.
McDONALD, J., concurs specially with an opinion.
OVERTON, Justice, specially concurring.
I concur but find that we should expressly recede from our language in Lamm v. Chapman, 413 So.2d 749, 753 (Fla. 1982), which stated: "The contempt power of the court is no longer available to enforce the child support obligation for those arrearages which have been reduced to a judgment debt for which execution may issue, regardless of whether the judgment was obtained by the department or by the custodial parent." That language was based on this Court's decision in Haas v. Haas, 59 So.2d 640 (Fla. 1952). As explained by Justice McDonald in his concurring opinion in this case, the election of remedies doctrine in its pure form mandates that once one chooses a remedy, the chosen remedy is the exclusive means of relief. Consequently, if one were to choose the remedy at law and have a judgment entered, then the equitable *573 remedy of contempt would not be available.
However, times have changed. As explained in the majority opinion in this case, both the United States Congress and the Florida Legislature have enacted legislation that expands the means available for collecting child support and alimony. Such legislation includes section 61.17(3), Florida Statutes (1989), which provides in part: "The entry of a judgment for arrearages for child support, alimony, or attorney's fees and costs does not preclude a subsequent contempt proceeding ... for failure of an obligor to pay the child support, alimony, attorney's fees, or costs for which the judgment was entered." (Emphasis added.) Consequently, the election of remedies doctrine no longer applies where support arrearages are concerned, and a party may seek payment of such arrearages through judgment enforcement proceedings and through contempt proceedings.
McDONALD, Justice, concurring specially.
The majority opinion correctly reports that Sackler v. Sackler, 47 So.2d 292 (Fla. 1950), and Haas v. Haas, 59 So.2d 640 (Fla. 1952), set this Court's course in a direction to require an affirmative answer to the question certified by the district court of appeal. Not available to us from the language of those opinions is the full content of the foreign judgments sued upon. Insofar as the employment of the contempt powers are concerned, I deem it important to view the language of such judgments.
In determining the applicability of contempt one must first review its definition. Section 38.23, Florida Statutes (1987), defines contempt as
[a] refusal to obey any legal order, mandate or decree, made or given by any judge either in term time or in vacation relative to any of the business of said court, after due notice thereof, shall be considered a contempt, and punished accordingly. But nothing said or written, or published, in vacation, to or of any judge, or of any decision made by a judge, shall in any case be construed to be a contempt.
In South Dade Farms, Inc. v. Peters, 88 So.2d 891 (Fla. 1956), this Court discussed the use of contempt powers to enforce an injunction and quoted with approval a definition of contempt from J. Oswald, Contempt of Court 5 (3d ed. 1911):
"Contempt of Court (which has been irreverently termed a `legal thumbscrew') is so manifold in its aspects that it is difficult to lay down any exact definition of the offense. `It is defined or described to be a disobedience to the Court, an opposing or a despising the authority, justice, or dignity thereof. It commonly consists in a party's doing otherwise than he is enjoined to do, or not doing what he is commanded or required by the process, order, or decree of the Court'."
South Dade Farms, 88 So.2d at 898.
For there to be civil contempt of court there must be a violation of a direct court order. In child support or alimony cases this is usually an order to pay child support, alimony, attorney's fees, or concerning visitation or custody of children. Most money judgments are simply the entry of a judgment in favor of one party against another without an order to pay. I do not believe that such a judgment will support a contempt finding because the nonpayment of a judgment is not a violation of a court order. In this case the 1969 order requiring support would support a contempt citation for willful noncompliance; the money judgment on an arrearage entered in 1985, standing alone, would be insufficient because it is not an order of the court. The action in this case was predicated on the judgment of arrearage and not the original order to pay. Perhaps this is a technical distinction, but one I deem important in deciding whether contempt lies.
Notwithstanding my belief that a judgment which was predicated on arrearages of a prior court order standing alone will not support the use of contempt powers, I conclude that the judgment in this case will. That is because the judgment sued upon contains a finding that Gibson was in *574 contempt of court. When that judgment is recorded in Florida, sections 55.501-55.509, Florida Statutes (1987), come into play and the Florida courts now have a judgment not only for money damages, but a finding of contempt. This is an adequate predicate for the Florida courts to employ remedies appropriate to punish for the contempt.[*]
We need to discuss and decide whether the reduction of the arrearage to judgment limits one to civil remedies or also allows equitable remedies. In Haas this Court stated:
A nonresident wife who seeks to enforce in the courts of this state a final alimony decree or money judgment based thereon entered by a court in another state may do so in a court of law by a common-law action to secure a money judgment for the delinquent alimony, or she may ask our equity court to exert its equitable remedies in the enforcement of such decree. If she chooses the latter forum, she must be prepared to meet any equitable defenses which are recognized in this state in an equitable action to enforce a domestic decree for alimony.
59 So.2d at 643. This seemingly restricts a complainant to equitable or civil proceedings in Florida.
This, and our language in Lamm v. Chapman, 413 So.2d 749 (Fla. 1982), cited in the majority opinion was predicated on the concept of election of remedies, i.e., an aggrieved party can pursue but one route. I now conclude that this principle of law has no place in the collection of child support and alimony payments. In this regard I concur fully with the majority and with Grotnes v. Grotnes, 338 So.2d 1122 (Fla. 4th DCA 1976).
The majority is absolutely correct in the conclusion that the equitable powers of enforcement for uncollected child support continue after the child reaches majority.
NOTES
[1] At the time Gibson was discovered, his three children were 15, 16, and 17 years old, respectively.
[2] Historically, the obligation for support fell only upon the father. In recent years, however, many states including Florida have adopted statutes that impose this legal duty on both the father and the mother.
[3] If the trial court determines the defaulting party has continually and willfully neglected his or her support obligations or has affirmatively acted to divest himself or herself of assets and property, then criminal contempt proceedings are appropriate. Bowen v. Bowen, 471 So.2d 1274, 1279 (Fla. 1985). These proceedings are designed to punish for conduct offensive to the public and in violation of a court order or to vindicate the authority of the court. These proceedings must fully comply with rule 3.840, Florida Rules of Criminal Procedure, and defendants are entitled to the appropriate due process protections, which may include court-appointed counsel.
[4] A trial court is not limited to the amount of cash immediately available to the defaulting party when determining whether that individual possesses the ability to pay the purge amount. The trial court may look to all assets from which the amount might be obtained. Bowen, 471 So.2d at 1279.
[5] This issue has been considered by a number of courts in other jurisdictions. See cases cited in Annot., Power of Divorce Court, after Child Attained Majority, to Enforce by Contempt Proceeding Payment of Arrears of Child Support, 32 A.L.R.3d 888 (1970 & Supp. 1987). Several have adopted substantially the same position as the first and third districts. See, e.g., Fox v. Fox, 56 Ill. App.3d 446, 14 Ill.Dec. 201, 371 N.E.2d 1254 (1978); Lieder v. Straub, 230 Minn. 460, 42 N.W.2d 11 (1950); Thompson v. Albers, 1 Ohio App.3d 139, 439 N.E.2d 955 (1981); McCullough v. McCullough, 483 S.W.2d 869 (Tex.Civ.App. 1972); Dawson v. Dawson, 71 Wash.2d 66, 426 P.2d 614 (1967). Others have held that contempt is an appropriate remedy to enforce child support arrearages after the child reaches the age of majority. See, e.g., Tande v. Bongiovanni, 142 Ariz. 120, 688 P.2d 1012 (1984); Arnold v. Arnold, 35 Conn.Sup. 244, 407 A.2d 190 (1979); Crumpacker v. Crumpacker, 239 Kan. 183, 718 P.2d 295 (1986); Griffin v. Reeve, 141 Wis.2d 699, 416 N.W.2d 612 (1987).
[6] We note that in 1987, the legislature amended The Revised Uniform Reciprocal Enforcement of Support Act, chapter 88, Florida Statutes (1987). Ch. 87-95, Laws of Fla. In doing so, the following addition was made to section 88.012, entitled legislative intent:

It is further the legislative intent that the Revised Uniform Reciprocal Enforcement of Support Act is an appropriate statute under which to collect support arrearages after the child is no longer dependent.
Id. (emphasis added). This amendment is further evidence of the general legislative intent, apparent from the statute even before the amendment, that custodial parents and the general citizenry of the state through public assistance programs be relieved of the burden imposed by a nonpaying parent. Support arrearages may be enforced after a child attains the age of majority by a proceeding under the act, including a proceeding for civil contempt, as provided by section 88.101, Florida Statutes (1989).
[*] For this type of action I believe that §§ 55.501-55.509, Fla. Stat. (1987), make the general rule that the power to punish for contempt rests with the court contemned, and one court cannot punish a contempt against another court, inapplicable.