W. SHARP, Judge,
concurring specially.
Kutz, the former husband, appeals from a final judgment ordering him to pay Fank-hanel, the former wife, an arrearage of $40,254.51 for unpaid child support, and modifying an income deduction order[1] from $400 biweekly to $700 per month. At issue in this case is the total amount of child support for the parties’ two children and unpaid medical expenses, owed by Kutz. All of these claimed obligations accrued prior to the children’s attaining the age of majority, although this particular enforcement suit was filed after they turned eighteen years of age. I agree we should affirm, but write to explain why.
The parties in this case were married in 1964. In 1968, their eldest son, Syme, was born. Their second child, Zachary, was born in 1969. The marriage ended after a Florida dissolution judgment was rendered in 1977. Fankhanel was awarded custody of the children and Kutz was ordered to pay $350 per month for child support, plus all medical bills for the children which exceeded $25.00 per visit, and one-half of their dental expenses in excess of $25.00 per visit.
In 1978, Fankhanel filed the first of many post-judgment proceedings.[2] She obtained an arrearage judgment in the amount of $1,694 and Kutz was ordered to pay her $450 per month comprised of current and past due child support through the clerk of the circuit court. In turn, Fankha-nel was ordered to pay her attorneys $50 per month in excess of $400.00 until her past due child support and medical expenses were paid in full, and thereafter, $100 per month until the $1,133 attorney’s fee from the original dissolution case was paid in full. This order is dated February 23, 1978. In April 1979, the court ordered Kutz to pay $616 “towards the arrearage.”
Syme, the parties’ eldest child, was very bright and gifted, but he was also extremely upset about his parents’ divorce. Fank-hanel sought psychological counseling for him in Sarasota, and tried to follow the experts’ advice. Syme was fearful his father would abandon him. As the counselors advised, Fankhanel allowed Syme to visit his father on an “open” basis. However, she had difficulties disciplining him, even when he was ten years old. His behavior was, as he admitted, out of control. Fankhanel allowed him to live with Kutz, in Sanford, commencing in October 1978, through the end of the school year.
Fankhanel also decided it would be in the best interest of herself and the children to move their residence from Sarasota to Colorado. Kutz consented to the move, with the understanding that his child support obligations for Syme would be abated for the time Syme lived with him in 1978 and 1979. The parties jointly stipulated to an order entered by the original dissolution court (in Sarasota) allowing either party to remove the children from Florida, and abating $175 of Kutz’ child support obligation: “such period beginning November 1, 1978 and anticipated to end May 31, 1979.”
In June of 1979, Fankhanel and the boys moved to Colorado. Syme spent month-long summer visits with his paternal grandparents in Minnesota. He attended school in both Colorado and Sanford, living part time with Fankhanel and part-time with Kutz, until 1985. After a run-in with the law, the juvenile court in Sanford ordered him to leave Florida and live with Fankha-nel. She helped him obtain his GED and take some college courses, and he helped *875 her open a store. In 1986, Syme enlisted in the armed forces, after which he was involved in a serious motorcycle accident. He then attained eighteen years of age.
While in Colorado, Fankhanel sued Kutz for child support arrearages. She obtained a Colorado judgment in 1989 in the amount of $61,427.62, which included the arrearag-es still unpaid under the 1978 Florida judgment. In 1989, she registered the Colorado judgment in the Circuit Court for Orange County, Florida, where Kutz was employed, and sought to have it recognized and enforced. This action led to an appeal to this court where we upheld the lower court’s refusal to give full faith and credit to the Colorado judgment because of lack of personal jurisdiction over Kutz. See Fankhanel v. Kutz, 576 So.2d 397 (Fla. 5th DCA 1991).
In 1990, before the foreign judgment suit was resolved, Fankhanel filed this suit in Orange County, Florida, to enforce past due child support which had accrued under the 1977 Florida dissolution decree and subsequent modifications. A trial was held in two stages. The first occurred on January 16, 1991. The second was delayed until after the foreign judgment suit was resolved on appeal because the suits potentially involved a duplication of unpaid ar-rearages. The second stage went forward on June 27, 1991.
Kutz argues the judgment now being appealed by him should be reversed because Fankhanel lacks standing to enforce past due child support through a motion for contempt since both sons were over eighteen years of age when her motion was filed. Secondly, Kutz questions the propriety of the judgment because it commences the accounting for defaults with the 1978 arrearage judgment of $1,692, rather than with the 1977 dissolution decree, and because it fails to “credit” him in full (at least for $175.00 per month) for the time Syme lived with him, after 1978 (essentially full time). Thirdly, Kutz argues the court erred in awarding any interest on child support arrearages. I shall discuss each point below.
STANDING
Kutz argues that the trial court lacked jurisdiction to hear Fankhanel’s motion for contempt, filed in Orange County, Florida, because both Syme and Zachary were over eighteen years of age when the action was filed. The claimed arrearages had accrued while the children were under eighteen years of age. Kutz relies on Roberts v. Roberts, 385 So.2d 1032 (Fla. 5th DCA 1980) which held that after a child attains the age of majority, past due child support arrearages are not enforceable by contempt. Because the present case culminated in a judgment for arrearages, however, Roberts is not controlling. The concept of election of remedies no longer applies in this context. See Grotnes v. Grotnes, 338 So.2d 1122 (Fla. 4th DCA 1976). Further, it appears that Gibson v. Bennett, 561 So.2d 565 (Fla.1990) has changed the rule of law relied upon by Roberts.
Gibson expressly holds that even after a child attains eighteen years of age, child support arrearages are enforceable by contempt remedies. Although Gibson involved the enforcement of a sister court’s child support arrearage judgment by a Florida court, in a lawsuit filed by the. former wife, that is a distinction without significance. Surely Florida courts give at least as much “full faith & credit”[3] to Florida judgments, as they do to out-of-state judgments.
The Gibson decision relied upon section 61.17(3), Florida Statutes (1989), provides:
The entry of a judgment for arrearages for child support, alimony, or attorney’s fees and costs does not preclude a subsequent contempt proceeding or certification of a IV-D case for intercept, by the United States Internal Revenue Service, for failure of an obligor to pay the child support, alimony, attorney’s fees or costs for which the judgment was entered.
The court pointed out that this generally applicable statute does not distinguish between suits brought for child support ar-rearages after the child attains majority, *876 and those brought before the child is “of age.” Nor does it distinguish between ar-rearages accruing under Florida dissolution decrees and those accruing under sister-state decrees.
Gibson concludes with a strong public policy argument, which answers in full Kutz’s arguments on standing and jurisdiction:
Today, support-dependent parents and the courts often experience great difficulty obtaining compliance with support orders while a child is a minor even though the remedy of contempt is available. If the courts lack the power to enforce child support orders through contempt proceedings after the child reaches majority, a nonpaying parent may escape his or her support obligation entirely, especially a parent with little or no property subject to attachment in an action at law. If a parent dependent on support is left with the less effective civil action, the nonpaying parent may be encouraged to hide assets or purposefully elude the court until the child attains age eighteen, preferring the civil action on a debt rather than a contempt proceeding. As this court has previously stated, we have no desire to make this state a haven for those who wish to avoid their support obligations. Sackler v. Sackler, 47 So.2d [292] at 294 [Fla.1950], Accordingly, we hold that a judgment for support arrear-ages is enforceable by contempt proceedings after a child has reached the age of majority. In our view, emancipation does not extinguish a support-obligated parent’s responsibility to pay the past due support.
Gibson, 561 So.2d at 572.
CALCULATION OF ARREARAGES
At the trial below, the parties agreed that their accountings for arrearages are substantially similar, with two exceptions. First, Kutz’s accountings commence in 1977 with entry of the dissolution decree, and Fankhanel’s commence with the February 23, 1978 arrearage judgment for $1,692. Second, Kutz calculates a $175 per month child support abatement during the period Syme lived with him, beginning in November 1978, substantially through to his majority. The trial judge declared at trial that he was going to accept Fankha-nel’s account on child support arrearages, although he threw out her claims for un-reimbursed medical and dental expenses en toto. He challenged Kutz to demonstrate to the court why Fankhanel’s accounting was erroneous. Based on this record, Kutz failed to do so.
The 1978 judgment for arrearages appears to be the “law of the case” at that point in time. Kutz did not appeal nor did he seek clarification of its terms. He argues that the 1978 judgment includes an award for Fankhanel’s attorney’s fees and for the children’s medical expenses. The trial court said the arrearage judgment was less than clear on that point. But, in view of section 61.17(3), quoted above, which makes a judgment for arrearages for child support as well as attorney’s fees and costs enforceable by contempt measures, Kutz’s argument appears irrelevant.
With regard to Kutz’s defense of abatement and laches, I think we cannot overturn the trial court’s fact findings based on the record before us. The parties disputed whether the 1979 stipulation for a $175 per month abatement was intended to be “open-ended” or whether it was intended to end on May 31, 1979. The trial court ruled it was not open-ended, and that it closed on May 31, 1979 as stated in the document.
Following along this same theory, Kutz argued that he should receive retroactive abatement for the years Syme lived more often with him than with Fankhanel, essentially, “since the last date in the abatement stipulation,” May 31,1979. Again, the parties gave contradictory versions of Syme’s whereabouts after May 1979. He was apparently enrolled in schools in both Florida and Colorado for overlapping time periods. From time to time, he visited or resided in both parents’ households, and had long summer vacations with his grandparents in Minnesota. But at no time did Kutz move to abate or reduce his child support obli *877 gation for Syme, nor did he seek to change Syme’s custody and residence from Fank-hanel to himself.
The trial court made express findings that Fankhanel had sent Syme to Kutz on “at least 3 occasions.” But, it also found that she was not at fault because she was “unable to manage the child.” He concluded that Syme had “played each parent against the other in going back and forth between the parties,” and “that although the child lived back and forth between the parents, he lived in his father’s home most of the time.” Under these circumstances, the trial court declined to apply Nolte v. Nolte, 544 So.2d 1146 (Fla. 2d DCA 1989) to this case.
Nolte is an example of one of those “extraordinary” or “exceptional” cases in which the court declined to enforce child support arrearages which had accrued in full under a dissolution decree. In Nolte, there is a suggestion that the child was permanently expelled from the custodial parent’s home, and that its care was thereafter assumed by the noncustodial obligor parent. The trial court in that case found strong equitable reasons or reprehensible conduct on the custodial parent’s part to retroactively terminate support. The Second District affirmed.
However, the long accepted general rule in Florida is that past due and unpaid child support payments become “vested” and are unmodifiable retroactively.[4] This enforces the public policy of requiring the obligor parent to seek a modification of his or her duties, rather than allowing him or her to unilaterally change a court order.[5] Thus, although there may be cases where equitable defenses such as estoppel and laches should apply to bar collection of past due arrearages,[6] these cases are few and far between. And, they necessarily turn on their own peculiar facts. These cases are also addressed to the trial judge’s discretion. Since the trial judge declined to apply the Nolte defense (in whole or in part), this court should affirm. It would be improper to overrule his conclusion that the facts in this case are not sufficiently “compelling” or “extraordinary.” See Thornton v. Byrnes, 537 So.2d 1088 (Fla. 3d DCA 1989).
INTEREST
The trial court in this case decreed that interest should be calculated on the unpaid arrearages in accord with Applegate v. Applegate, 566 So.2d 865 (Fla. 1st DCA 1990). It found an arrearage of $28,175 under the prior decrees, and allowed interest at the applicable legal rate during the time the payments were unpaid. Crediting Kutz for payments he made through June of 1991, the total owed was $40,254.51. The court further ordered that interest be paid on that amount at the rate of twelve percent per annum. The interest calculations and award are consistent with Florida law. See Applegate; Leone v. Weed, 474 So.2d 401 (Fla. 4th DCA 1985); Butchart v. Butchart, 469 So.2d 965 (Fla. 4th DCA 1985); Melvin v. Melvin, 391 So.2d 691 (Fla. 1st *878 DCA 1980), rev. denied, 399 So.2d 1144 (Fla.1981).

. § 61.1301, Fla.Stat. (1991).

. She testified her efforts to collect child support since 1982 had required her to go to court twenty-three times, and had involved thirteen different attorneys acting on her behalf.

. U.S. Const. Art. IV, § 1.

. See Pottinger v. Pottinger, 133 Fla. 442, 182 So. 762 (1938); Onley v. Onley, 540 So.2d 880 (Fla. 3d DCA 1989); Ragan v. Thomas, 515 So.2d 405 (Fla. 1st DCA 1987); Kolb v. Kolb, 502 So.2d 518 (Fla. 1st DCA 1987); Hammond, v. Hammond, 492 So.2d 837 (Fla. 5th DCA 1986); Guarino v. Guarino, 431 So.2d 189 (Fla. 2d DCA), rev. dismissed, 441 So.2d 632 (Fla.1983); Fox v. Haislett, 388 So.2d 1261 (Fla. 2d DCA 1980); Smithwick v. Smithwick, 343 So.2d 945 (Fla. 3d DCA 1977); Goff v. Goff, 151 So.2d 294 (Fla. 3d DCA 1963).

. See Pottinger v. Pottinger, 133 Fla. 442, 182 So. 762 (1938); Puglia v. Puglia, 600 So.2d 484 (Fla. 3d DCA 1992); Larger v. Diaz, 595 So.2d 1092 (Fla. 3d DCA 1992); Bingemann v. Bingemann, 551 So.2d 1228 (Fla. 1st DCA 1989), rev. denied, 560 So.2d. 232 (Fla.1990); Raybuck v. Raybuck, 451 So.2d 540 (Fla. 2d DCA 1984); Adams v. Adams, 423 So.2d 596 (Fla. 3d DCA 1982); Patterson v. Patterson, 348 So.2d 592 (Fla. 1st DCA 1977).

.See Parrish v. Department of Health and Rehabilitative Services, 525 So.2d 1029 (Fla. 5th DCA 1988); Department of Health and Rehabilitative Services on Behalf of Soles v. Thomas, 477 So.2d 1053 (Fla. 5th DCA 1985), rev. denied, 488 So.2d 829 (Fla.1986); Robinson v. State, Department of Health and Rehabilitative Services on Behalf of Robinson, 473 So.2d 228 (Fla. 5th DCA), dismissed, 478 So.2d 53 (Fla. 1985); Task v. Oesterle, 356 So.2d 61 (Fla. 3d DCA 1978).