BENTON, J.
By petition for writ of certiorari, Geary W. Senterfítt seeks review of an order holding him in contempt and ordering him incarcerated until he pays back child support. We grant the petition, quash the order, and remand for further proceedings.
*432 The order under review, which is styled order upon wife’s second amended motion for enforcement and contempt and motion for attorney’s fees and costs, found, ordered and adjudged:
2. For the Former Husband’s willful non-payment of the previously established purge amount of $10,000, the Court finds the Former Husband in contempt of court.
[[Image here]]
4. ... [t]he Court finds that the Former Husband can pay the child support arrearage of $50,254.45, $5,244 for attorney’s fees and costs, and $551.88 for his February, 2000, payment....
5. The Court directs that the Former Husband shall be incarcerated for an indefinite period of time for said contempt which incarceration shall be reviewable in 90 days of his incarceration. However, the Former Husband shall have at all times the ability to purge his contempt by payment of the purge amount of $56,050,33, plus the Sheriffs service fee of $50, the Clerk’s fee of $5.25, and all other costs of incarceration, including any transportation costs.
The parties have proceeded on the assumption, which the record supports, that the trial court found petitioner in civil contempt, but did not adjudicate him guilty of criminal contempt.[1]
Before the present round of proceedings, the trial court had ordered Mr. Sen-terfitt to pay $10,000 towards back child support by a date certain. Before the date arrived, rather than complying, he filed a motion for extension on the ground that, after the trial court entered its order, he had paid more than $18,000 to post a bail bond and $7,500 in attorney’s fees, so that he no longer had $10,000.
Ms. Oaks responded with motions for enforcement and contempt. At the hearing that the trial court held on her second amended motion for enforcement and con *433 tempt and motion for attorney’s fees and costs, Ms. Oaks put on no evidence showing that Mr. Senterfitt had the current ability to pay back child support in any amount.
Instead, she relied solely on the facts that the court had earlier ordered Mr. Senterfitt to pay $10,000 and that he had failed to do so for the reasons he had alleged in his motion. See Gregory v. Rice, 727 So.2d 251, 254 (Fla.1999); Lawrence v. State, Dep’t of Revenue, 755 So.2d 139, 140 (Fla. 2d DCA 1999). Findings at least implicitly made in the earlier proceedings did give rise to a presumption that he still had the ability to pay $10,000. See Gibson v. Bennett, 561 So.2d 565, 570-71 (Fla.1990); Bowen v. Bowen, 471 So.2d 1274, 1278 (Fla.1985); Pope v. McKee, 565 So.2d 785, 786 (Fla. 5th DCA 1990).
[T]he initial order or judgment directing a party to pay support or alimony is predicated on an affirmative finding that the party has the ability to pay. This initial judicial determination creates, in subsequent proceedings, a presumption that there is an ability to pay. In a civil contempt proceeding for failure to pay child support or alimony, the movant must show that a prior court order directed the party to pay the support or alimony, and that the party in default has failed to make the ordered payments. The burden of producing evidence then shifts to the defaulting party, who must dispel the presumption of ability to pay by demonstrating that ... [2] he no longer has the ability to meet his support obligations.
Bowen, 471 So.2d at 1278-79. But the evidence put on at the later hearing — that Mr. Senterfitt had paid others in excess of $25,000 since having been found capable of making merely a $10,000 payment — tended logically to rebut the presumption that he still had the ability to pay even $10,000.[3] Certainly nothing in the record supports setting a purge amount greater than that by more than a factor of five. Her own evidence dispelled the presumption on which Ms. Oaks relied, and failed to prove Mr. Senterfitt had a current ability to pay the purge amount.
Despite this lack of evidence, the trial court entered an order finding that Mr. Senterfitt had the ability to pay $56,050.33, the entire amount of back child support, (including attorney’s fees of $5,244.00), and ordered him incarcerated until he did so. Because incarceration can only be ordered for civil contempt when the contemnor is able to purge himself of contempt, see Bowen, 471 So.2d at 1277, a party without the current ability to pay the purge amount cannot lawfully be incarcerated as a means of coercing payment. See Fishman v. Fishman, 656 So.2d 1250, 1252 (Fla.1995); Coogan v. Coogan, 662 So.2d 1380, 1381 (Fla. 1st DCA 1995); Rosen v. Rosen, 579 So.2d 846, 846 (Fla. 4th DCA 1991); Russell v. Russell, 559 So.2d 675, 677 (Fla. 3d DCA 1990); Ponder v. Ponder, 438 So.2d 541, 543 (Fla. 1st DCA 1983). Whether the trial court’s finding that Mr. Senterfitt willfully refused to comply with the court order requiring him to pay $10,000 would support an adjudication of indirect criminal contempt, if the procedures required by Florida Rule of Criminal Procedure 3.840 had been fol *434 lowed,[4] is not before us. That the trial court erred in finding petitioner in civil contempt is clear.
The petition for writ of certiorari is granted, the order upon wife’s second amended motion for enforcement and contempt and motion for attorney’s fees and costs is quashed, and the case is remanded for further proceedings consistent with this opinion.
ALLEN and BROWNING, JJ., concur.

. Our supreme court explained the difference between civil and criminal contempt in Bowen v. Bowen, 471 So.2d 1274, 1277 (Fla.1985):
[T]he purpose of a civil contempt proceeding is to obtain compliance on the part of a person subject to an order of the court. Because incarceration is utilized solely to obtain compliance, it must be used only when the contemnor has the ability to comply. This ability to comply is the contem-nor’s "key to his cell.” Pugliese [v. Pugliese, 347 So.2d 422, 424 (Fla.1977) ]. The purpose of criminal contempt, on the other hand, is to punish. Criminal contempt proceedings are utilized to vindicate the authority of the court or to punish for an intentional violation of an order of the court. Andrews [v. Walton, 428 So.2d 663 (Fla.1983) ]; Pugliese; Demetree v. State ex rel. Marsh, 89 So.2d 498 (Fla.1956); In re S.L.T., 180 So.2d 374 (Fla. 2d DCA 1965). Because this type of proceeding is punitive in nature, potential criminal contemnors are entitled to the same constitutional due process protections afforded criminal defendants in more typical criminal proceedings. See Aaron v. State, 284 So.2d 673 (Fla.1973); see also Fla.R.Crim.P. 3.830, 3.840. We continue to adhere to the view that incarceration for civil contempt cannot be imposed absent a finding by the trial court that the contemnor has the present ability to purge himself of contempt. Without the present ability to pay from some available asset, the contemnor holds no key to the jailhouse door.
See also Bontrager v. Sessions, 582 So.2d 766, 767-68 (Fla. 1st DCA 1991).
In the present case, moreover, the trial court ordered an indeterminate period of incarceration. When ordering incarceration as a sanction for criminal, as opposed to civil, contempt, the sentencing court must pronounce a definite, determinate and certain sentence. See Satterfield v. Satterfield, 39 So.2d 72, 74 (Fla.1949) ("[A] court has the power to punish for contempt a refusal to obey any legal order, mandate or decree of a court, but the term of imprisonment must be definite and certain”); Carter v.. State, 409 So.2d 127, 128 (Fla. 5th DCA 1982) ("The purpose of criminal contempt proceedings is punishment, rather than coercion; punishment for criminal contempt may be by fine or imprisonment or both, but the terms and amounts must be definitely stated.”); State v. Anderson, 168 So.2d 554, 555 (Fla. 1st DCA 1964) ("[T]he term of imprisonment for contempt of court must be definite and certain.”); see also Art. I, § 17, Fla. Const. ("Excessive fines, cruel or unusual punishment, attainder, forfeiture of estate, indefinite imprisonment, and unreasonable detention of witnesses are forbidden.” (emphasis supplied)).

. Elided from the quote from Bowen, 471 So.2d at 1278-79, set out in the text is the following:
due to circumstances beyond his control which intervened since the time the order directing him to pay was entered.
That a failure to pay was intentional must be proven to establish indirect criminal contempt. See Perez v. Perez, 599 So.2d 682, 683 (Fla. 3d DCA 1992); Ponder v. Ponder, 438 So.2d 541, 543 (Fla. 1st DCA 1983).

. Assets that are irretrievably gone cannot contribute to a "present ability to pay the purge amount.” Bowen, 471 So.2d at 1280. This is not to say that the trial court's finding that the failure to make the $10,000 payment was willful could not, if the procedural requirements had been observed, have justified a finding of indirect criminal contempt.

. Ms. Oaks’s unsworn second amended motion for enforcement and contempt and motion for attorney’s "fees and costs is not an "affidavit of [a] person having knowledge of the facts.” Fla.R.Crim.P. 3.840(a); see Baker v. Green, 732 So.2d 6, 7 (Fla. 4th DCA 1999); B.L.J. v. State, 678 So.2d 530, 530 (Fla. 1st DCA 1996); Hunt v. State, 659 So.2d 363, 364 (Fla. 1st DCA 1995). Nor does the record we have contain an order stating the essential facts constituting the alleged criminal contempt and directing Mr. Senterfitt to appear before the court to show cause why he should not be held in indirect criminal contempt, which is also required by Florida Rule of Criminal Procedure 3.840(a). See Judkins v. Ross, 658 So.2d 658, 659 (Fla. 1st DCA 1995); Hill v. State, 643 So.2d 1178, 1178 (Fla. 2d DCA 1994).
Failure to comply with the procedural requirements of rule 3.840 precludes a finding of indirect criminal contempt. See Hunt, 659 So.2d at 364 ("The state correctly concedes that the show cause order was defective, but argues that the deficiency did not amount to fundamental error and was thus waived by appellant's failure to make an objection. We reject this argument as it is contrary to unequivocal authority holding that noncompliance with the provisions of Rule 3.840 constitutes fundamental error.”); Judkins, 658 So.2d at 659; Hill, 643 So.2d 1178.