609 So.2d 1309 (1992)
FLORIDA BOARD OF BAR EXAMINERS RE S.M.D.
No. 79863.
Supreme Court of Florida.
December 10, 1992.
*1310 Lewis Kapner of Lewis Kapner, P.A., West Palm Beach, for petitioner.
Virginia B. Townes, Chairman, Orlando, John H. Moore, Executive Director, and Thomas A. Pobjecky, Gen. Counsel, Tallahassee, for respondent.
PER CURIAM.
This is a petition for review of a recommendation by the Florida Board of Bar Examiners not to admit an applicant to The Florida Bar. We have jurisdiction under article V, section 15 of the Florida Constitution.
S.M.D. completed her secondary education in 1981. After high school, she attended community college and worked to support herself. She married her first husband in July 1982. With her husband, she moved to Virginia where she continued to attend school while working. S.M.D. and her husband returned to Florida and were divorced in August of 1987. Pursuant to the divorce, S.M.D. was assigned $7,000 of debt, one half of the debt accumulated by her and her husband during the marriage.
S.M.D. received her undergraduate degree in December 1986. At that point, she had only been able to repay the interest on the debt from her first marriage. Despite the $7,000 debt, S.M.D. enrolled in a New England law school in September 1987. During her first year, she received the maximum student loans to cover tuition, books, and living expenses. During the summer after her first year in law school, S.M.D. returned to Florida and worked as a law clerk with a private firm.
In her second year of law school, S.M.D. again received the maximum amount in student loans. At this time, she married a third-year law student. Their wedding cost $2,000 and was financed primarily with credit cards. Prior to May 1989, S.M.D. owed approximately $8,000 to credit card companies.
After her second year in law school, S.M.D. and her husband moved to Florida. He had obtained a position with a private law firm which he was to begin after completing the bar exam. S.M.D. had arranged to complete her third year at a Florida law school. S.M.D. and her husband financed their move from New England to Florida and their living expenses that summer primarily with credit cards.
During her third year in law school, S.M.D. was employed as a law clerk. However, she had a hard time securing permanent employment. The credit card debt accrued by her and her husband had ballooned to approximately $25,000 and they were unable to maintain the interest payments. They were receiving "dunning" letters daily and were being sued by one credit card company in Virginia. S.M.D. sought help at Consumer Counseling and attempted to arrange a payment plan with the individual companies to no avail. During her final semester in law school, she sought legal advice and, on April 14, 1990, filed a joint petition for bankruptcy with her husband under Chapter 7 of the United States Bankruptcy Code. At this time S.M.D. and her husband had accumulated debt of $109,235.74. About $25,000 of the debt was credit card charges, and the balance was student and family loans. However, when the petition was filed, her husband had obtained a job with a law firm at an annual salary of $37,000, and she was still earning about $1,000 per month.
S.M.D. graduated from law school on May 20, 1990. She filed her application for admission to the bar on May 21, 1990, and passed the summer 1990 bar exam. Her credit card debts and family loans were discharged on September 6, 1990. S.M.D. appeared at an investigative hearing in February 1991 to answer questions concerning the circumstances surrounding the bankruptcy. She was served with specifications on June 24, 1991, and a formal hearing was held on January 10, 1992. The Board recommended that S.M.D. not be admitted.
In reaching its decision, the Board found three specifications proven and disqualifying. In specification 1, the Board found that S.M.D. had demonstrated financial irresponsibility *1311 between 1981 and 1990 by incurring, with her husband, $109,000 in debts, including $25,000 in credit card charges, and that her irresponsibility included purchasing goods and services on credit beyond her ability to repay the obligations in a timely manner. In specification 2, the Board found that the circumstances surrounding the bankruptcy evidenced substantial doubts as to S.M.D.'s respect for the rights of her creditors and a disregard of her moral obligation to pay her credit obligations. In specification 6, the Board found that S.M.D. made a statement on her bankruptcy petition that was false, misleading and lacking in candor.
With respect to specification 1, S.M.D. denies that she exhibited any financial irresponsibility. Most of the debt incurred was non-dischargeable student loan obligations. As to the remaining debt, only $14,000 is attributable to S.M.D. because the remainder was incurred by her husband. S.M.D. argues that the debt incurred during law school and discharged in bankruptcy represented reasonable and necessary living expenses and that the accrual of these expenses indicates nothing negative about her character. Further, S.M.D. denies that she ran up her credit card charges knowing she did not have the present ability to repay them.
Regarding specification 2, S.M.D. denies that the bankruptcy evidences any disregard to the rights of her creditors or any disregard of her moral obligations to them. While the Board alleges that S.M.D. and her husband filed for bankruptcy at a time when they were experiencing only a $113 deficit in their ability to meet their monthly debt obligations, she asserts that the figure does not include monthly expenses for any credit card liabilities, increased costs of supporting her husband's child, or student loan obligations which had not yet come due. Also, while S.M.D. did eventually find permanent employment, it was not until five months after filing the petition.
Despite the Board's contentions, S.M.D. asserts that the decision to seek relief in bankruptcy occurred only after all other reasonable alternatives had been exhausted and unforeseeable misfortunes had aggravated the dilemma to the point where bankruptcy appeared to be the only option. She and her husband had recently been turned down for additional loans. Finally, S.M.D. says she did not discharge any of her student loans and, in fact, is faithfully repaying them. Further, she has shown her moral responsibility to her creditors by attempting to work out repayment plans prior to filing and by actually paying her debts as best she could, both prior to and subsequent to the bankruptcy. S.M.D. says she has sent letters to her creditors reaffirming her intent to pay the debts.
Regarding specification 6, S.M.D. denies that any statements on her bankruptcy petition regarding her take-home pay are misleading. The figure S.M.D. claimed on the petition was adjusted for taxes and unusual time periods in which S.M.D. was able to work longer than normal hours. The adjustments were made pursuant to the instructions of her bankruptcy lawyer and no objections were made by the court or the creditors. She contends that the figure was not misleading and, under the circumstances, was reasonable.
The Board is rightly concerned over the morality of a person who continues to incur large debts with little or no prospect of repayment. Further, it cannot be doubted that a lawyer who is constantly in debt is more likely to succumb to temptations to the detriment of his or her clients or the public. On the other hand, the costs of a legal education are high and the ability to maintain oneself while attending school at the same time is limited. We suspect that it is the rule rather than the exception for today's law school graduate to be in debt.
There are also two sides to the declaration of bankruptcy. In Florida Board of Bar Examiners re G.W.L., 364 So.2d 454 (Fla. 1978), this Court accepted the Board's recommendation that the applicant not be admitted because he had declared bankruptcy. This Court stated:
The record before us reflects that the petitioner suffered no unusual misfortune or financial catastrophe prior to his filing the bankruptcy petition. His position *1312 was no different than that of other students who used student loans to obtain and complete their education. Although he did not have employment at the time of his graduation and for six months thereafter, the student loans were not yet due and for the most part would not be due for at least a year. In our view, his filing of the bankruptcy petition showed a disregard not only for the rights of his creditors but also for future student loan applicants. The filing of the bankruptcy petition was not illegal, but in our view it was done in such a morally reprehensible fashion that it directly affects his fitness to practice law.
To foreclose any misconstruction of this decision, we must emphasize that this ruling should not be interpreted to approve any general principle concerning bankruptcies nor to hold that the securing of a discharge in bankruptcy is an act inherently requiring the denial of admission to the bar. We further do not wish this decision to be construed to hold that any comparable exercise of a clear legal right will necessarily imperil bar admission.
Id. at 459-60.
However, one month later we directed the admission of another applicant who had also declared bankruptcy. Florida Bd. of Bar Examiners re Groot, 365 So.2d 164 (Fla. 1978). We distinguished G.W.L. as follows:
Unlike G.W.L., Groot was the father and legal custodian of two children born of his recently-terminated marriage. His expenses included not only his own living costs and those of his dependents, but to some degree those of his former wife. When his personal resources became exhausted, he was forced to prevail upon family members to loan him the money, to meet current living expenses while he was without a job. Thus, unlike G.W.L., Groot had suffered unusual misfortune at the time he finally secured employment, and he had a valid present need to devote his entire employment income to his current, not past, financial responsibilities. His circumstances warranted his turning to the remedy provided by federal law for persons in just such situations, and we hold that Groot's conduct under these circumstances is not morally reprehensible or indicative of a present unfitness for admission to the bar.
Groot, 365 So.2d at 168.
There is little or no dispute over the relevant facts.[1] Upon consideration, we cannot agree that the evidence sufficiently demonstrates the financial irresponsibility necessary to preclude S.M.D. from admission to the bar (specification 1). The vast majority of her debts were incurred in order to sustain herself and to go to school. With respect to the declaration of bankruptcy, we believe the case is closer to Groot than to G.W.L. Many of S.M.D.'s debts were overdue, and her creditors were contacting her on a daily basis. She had been unsuccessful in her job search. We do not believe that her decision to declare bankruptcy was morally reprehensible (specification 2).
For the reasons expressed above, we direct the admission of S.M.D. to The Florida Bar.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW and KOGAN, JJ., concur.
GRIMES, J., dissents with an opinion, in which HARDING, J., concurs.
GRIMES, Justice, dissenting.
While the facts may not be in substantial dispute, there is more than one conclusion which may be drawn from these facts. The Board made the following finding:
The Board concludes that the proven allegations of the Specifications cause grave concern as to the applicant's character and fitness to practice law. [S.M.D.'s] course of conduct in amassing *1313 a sizeable amount of creditor debts to subsidize her own standard of living at a time when she had little financial means in which to satisfy her creditors, combined with her actions of filing bankruptcy at the very time when her ability to repay was likely to markedly improve without having exhausted all reasonable alternatives to filing bankruptcy and her action of misrepresenting her true financial picture at the time of the petition, raises substantial doubts regarding [S.M.D.'s] honesty, fairness and respect for the rights of others. It appears to the Board that [S.M.D.'s] principal motive for filing bankruptcy was to defeat the creditors who had supported her day to day living for a substantial period of time. [S.M.D.'s] course of conduct also raises serious questions concerning the propriety of her being a counselor to others in their legal affairs.
There is sufficient evidence to support this conclusion. I would not substitute my judgment for that of the Board members who personally heard all of the testimony.
HARDING, J., concurs.
NOTES
[1] Regarding specification 6, while the Board's calculation may have been a more accurate reflection of S.M.D.'s pay at the time, the record does not support a finding that the figure arrived at by S.M.D. was false or lacking in candor.