PER CURIAM.
The Florida Board of Bar Examiners (the Board) petitions this Court to amend or adopt Rules Relating to Admissions to the Bar. We have jurisdiction pursuant to article V, section 15 of the Florida Constitution.
The Board has petitioned to create or amend these rules: article I, section 3.a. (qualifications for Florida Board of Bar Examiners); article I, section 4 (Florida Board of Bar Examiners); article I, sections 7.a.-c. (Board meetings and hearings); article I, section 14.f. (sanctions for violating confidentiality requirements); article III, section 2.h. (ineligibility of convicted felon to apply for Bar admission); article III, section 2.i. (ineligibility of probationer to apply for Bar admission until probation completed); article III, section 3.a. (background investigation); article III, section 3.c. (filing of specifications); article III, section 3.f. (formal hearings on specifications); article III, section 4.a. (petition for reconsideration); article IV, section l.b. (applications); article IV, section 2.c. (termination of application) (relocated from article VI, section 9); article IV, section 5.b. (filing of application for admission; ethics provisions including exemptions from Multistate Professional Responsibility Exam); article IV, section 8 (filing supplement of exemption from MPRE); article V (schedule of fees) (introductory clause); article VI, section 1 (examinations); article VI, section 3.b. (examinations); article VI, section 3.c. (examinations); article VI, section 7.e. (grading of MPRE); article VI, section 9.a.-b. (testing); article VI, section 9.c. (termination of application) (relocated to article IV, section 2.c.); and article VII, section 1 (certification to the Supreme Court and admission to The Florida Bar).
Some of the proposed amendments simply involve technical changes, and others are self-explanatory. We discuss only two proposals.
Article III, section S.c. and f. — Proposal for Conditional Admission for Applicants with Serious Financial Problems
Because of an increasing number of applicants to The Florida Bar with significant financial problems, the Board urges us to amend the rules to expand the conditional admissions program to these applicants.[1] We decline to do so.
This Court first approved conditional admissions in 1986 for applicants with drug, alcohol, or psychological problems. In re Petition of Fla. Bd. of Bar Examiners, 498 *974 So.2d 914 (Fla.1986). The purpose of conditional admissions is to help rehabilitate these new admittees. The Board estimates that approximately 125 people have been conditionally admitted since 1986.
We do not think conditional admission is appropriate for applicants with serious financial problems. Debt is not an illness or a disease. It is not clear that the rehabilitative function of conditional admissions would work for those applicants with financial problems. To allow conditional admission for financial difficulties would render the supervising agency into little more than a credit bureau. In addition, expanding conditional admissions would add more people to the program and would create more regulatory problems for the agency that supervises these admittees.
We believe the Board’s current practice is the best way to handle applicants with financial problems. Applicants who have fraudulently incurred or postponed the payment of debt typically are required to prove rehabilitation before they are admitted. But because some applicants legitimately incur debt to finance their legal education, we have recognized that debt alone is not a bar to admission. See Florida Bd. of Bar Examiners re S.M.D., 609 So.2d 1309 (Fla.1992).
In addition, over the last five years the Board has used a “credit string” that has been used for about thirty-five applicants whose debts are neither clearly legitimate nor fraudulent. According to the Board’s counsel, applicants must acknowledge their debts and swear to repay them. They are required to report back to the Board at predetermined intervals for one year. Under the Board’s rules, should an applicant fail to adhere to the sworn document, he or she may be investigated for making material misstatements.[2]
To expand the “credit string” and grant conditional admission to applicants with serious financial problems creates the risk of giving creditors leverage over a Bar applicant for an indefinite length of time. We believe the better practice is for the Board to continue to distinguish between someone i^ho cannot properly discharge his or her financial duties from someone who legitimately incurred debt or is simply poor. If an applicant presents a threat to the public because of financial difficulties, he or she should not be admitted to the Bar. Otherwise, the Bar can monitor attorneys and take action if financial problems interfere with the ability to ethically represent clients. The Board should continue to use the “credit string” sparingly.
Because we decline to adopt this proposed rule, we express no opinion on whether the Board or the Bar is the appropriate agency to monitor attorneys admitted under this proposal.
Article IV, section 5.b.(8), (9), (10) — Ethics Testing[3]
We adopt the Board’s proposal requiring an applicant to sign an affidavit attesting that he or she has read Chapter 4, Rules of Professional Conduct, and Chapter 5, Rules Regulating Trust Accounts, of the Rules Regulating The Florida Bar. We decline to adopt the Board’s proposal to eliminate the Multistate Professional Responsibility Examination (MPRE) for certain Bar applicants.[4]
*975 An applicant should be required to pass a separate ethics examination to gain admission to The Florida Bar. The ethics exam now given is the MPRE. This national exam consists of fifty multiple-choice questions that must be answered in a two-hour, five-minute period. The MPRE is administered three times per year at test sites throughout the country. Florida Bar applicants must attain a scaled score of seventy to pass the exam.
The Board contends that the MPRE has outlived its usefulness because it tests only American Bar Association provisions and not Florida rules. Despite this shortcoming, we are not prepared to say that the examination serves no purpose and should be eliminated.
In urging us to eliminate the MPRE, the Board points out that it has recently adopted a policy of including ethics questions on every Bar examination. But the Board acknowledges that, despite its policy, an applicant can miss the ethics questions and still pass the Bar exam. We do not think this alone puts sufficient emphasis on ethical rules, although we encourage the Board to continue to include ethics questions on the Florida section of the bar exam.
Because of the Board’s legitimate concern that the MPRE does not test Florida’s ethics rules, we suggest that the Board consider developing its own, separate ethics exam. At oral argument, counsel for the Board indicated that the Board had not determined the feasibility of developing such an exam. If the Board does develop a separate ethics exam, the Court would substitute that exam for the MPRE requirement that now exists. Until that time, Florida applicants will be required to take and pass the MPRE.
Accordingly, we amend and adopt the rules as reflected in the Appendix to this opinion.[5] Underscoring indicates new language; strike-through type indicates deletions. The Board’s rationale is included only for explanation and guidance and is not adopted as an official part of the rules. These rules shall take effect upon the release of this opinion.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
APPENDIX
Article I, section 3 as it will appear:
Section 3. The Board of Governors of The Florida Bar shall submit to the Court not less than thirty days prior to the expiration of the term of any attorney member of the Board, and in ease of a vacancy, within thirty days thereafter, its recommendations with respect to appointees. Such group of recommended appointees shall be thrice the number to be appointed.
A joint committee composed of three members of the Board and three members of the Board of Governors of The Florida Bar shall submit to the Court not less than thirty days prior to the expiration of the term of any public member of the Board, and in the case of a vacancy, -within thirty days thereafter, its recommendations with respect to appointees. Such group of recommended appointees shall be thrice the number to be appointed.
The following provisions will be pertinent in connection with the nominations to membership on the Board:
a. Qualifications. Attorney members shall be practicing attorneys with scholarly attainments and an affirmative interest in legal education arid requirements for admission to the Bar. Attorney members shall have been members of The Florida Bar for at least five years. Public members shall be nonlawyers and shall have an academic Bachelor’s Degree. It is desirable that public members possess educational or work-related experience of value to the Board such as educational testing, accounting, statistical *976 analysis, medical or psychologically related sciences.
b. Tenure. A bar examiner should be appointed for a fixed term, but should be eligible for reappointment if the examiner’s work is of high quality. Members of the Board should be appointed for staggered terms to insure continuity of policy, but there should be sufficient rotation in the personnel of the Board to bring new views to the Board and to insure continuing interest in its work.
c. Devotion to Duty. A bar examiner should be willing and able to devote whatever time is necessary to perform the duties of examiner.
d. Essential Conduct. A bar examiner should be conscientious, studious, thorough and diligent in learning the methods, problems and progress of legal education, in preparing bar examinations, and in seeking to improve the examination, its administration and requirements for admissions to the Bar. Each examiner should be just and impartial in recommending the admission of applicants and should exhibit courage, judgment and moral stamina in refusing to recommend applicants who lack adequate general and professional preparation or who lack good moral character.
e. Adverse Influences, Conflicting Duties and Inconsistent Obligations. Bar examiners should not have adverse interests, conflicting duties nor inconsistent obligations which will in any way interfere or appear to interfere with the proper administration of their functions. Appointment or election to the bench at any level of the court system, federal, state, county or municipal, shall constitute a disability to serve as a bar examiner so long as such individual shall continue to serve in such capacity. Bar examiners should not participate directly or indirectly in courses for the preparation of applicants for bar admission nor act as a trustee of a law school or a university with which a law school is affiliated. Bar examiners should so conduct themselves that there may be no suspicion that their judgment may be swayed by improper considerations.
RATIONALE:
The proposed rule amendment would establish a minimum membership requirement of five years in The Florida Bar for attorney members of the Board. The proposal was initially requested by The Florida Bar. In her letter of request to the Board, dated October 20, 1993, Bar President Patricia A. Seitz stated in part:
Last July when a screening committee of The Board of Governors was reviewing the applications for the two lawyer vacancies coming up on the Florida Board of Bar Examiners, the observation was made that an overwhelming number of the fifty-eight applicants had been members of The Florida Bar less than five years. The screening committee reported its concern to the Board at its July meeting and requested that I write to you about the possibility of amending the Rules Relating to Admissions to the Bar to require a minimum of five years Bar membership for attorney members of your board.
The Board fully endorses the Bar’s proposal. In fact, attorney members of the Board have almost always had in excess of five years in the Bar at the time of their appointments to the Board. The proposal would simply codify the historical practice of the Bar of recommending to the Court only experienced attorneys for appointment to the Board.
The proposal is also reasonable because maturity and practical experience derived from the practice of law are invaluable to enable attorney bar examiners to perform their duties in a fair, impartial and effective manner.
Article I, section 4 as it will appear:
Section 4. During the month of October of each year the Board shall designate a Vice Chairman Chair who shall hold office for a period of one year beginning on the ensuing November 1. In October of each succeeding year the previously elected Vice Chairman Chair shall automatically be elevated to the Office of Chairman Chair for a period of one year beginning November 1 following such person’s term as Vice Chairman Chair. Such designation shall be determined by ma *977 jority vote. In the event of an irreconcilable tie vote, such fact shall be certified to the Supreme Court and it shall designate the Vice Chairman Chair for the ensuing year. RATIONALE:
The proposed rule changes are housekeeping in nature pertaining to the elimination of gender-specific language in the rules.
Article I, section 7 as it will appear:
a. Meetings of the-Board may be held at such places and-times-as-may be fixed ■ from time to time by-the Board. The Board shall meet in formal session throughout the State of Florida on a regularly scheduled basis to handle administrative and applicant matters and to conduct investigative and formal hearings. Subject to the approval of the full Board, the places and times of such meetings shall be determined by the Chair of the Board.
b. Hearings- shall be conducted by the Board in the State-of Florida on the second Fridays-of March, June, September-and November of each year-and-may be conducted at such other times and at such places — as may be fixed-b-y^-the Board. Hearings may also be conducted by special hearing panels of the Board to be convened at such other times and at such places as may be fixed by the Board.
c. Upon giving reasonable notice, the Chairman Chair of the Board may conduct a meeting of the Board by conference telephone call for routine administrative action or for emergency action.
RATIONALE:
The proposed amendment is housekeeping in nature. The current language of Article 1, Section 7 was originally approved when the number of hearings conducted by the Board was relatively small. For a number of years, however, the Board has greatly exceeded the minimum requirement of 4 monthly meetings. For example, during calendar year 1992, the Board held 10 monthly meetings and convened 4 special hearing panels. The proposed rule amendment modernizes the provisions on meetings and conforms such provisions to the Board’s current practices.
The proposed rule change to section c. is housekeeping in nature pertaining to the elimination of gender-specific language in the rules.
Article I, section 14 as it will appear:
Section 14. All information maintained by the Board in the discharge of those responsibilities delegated to it by the Supreme Court of Florida shall be confidential except as provided by these Rules or otherwise authorized by the Court. All matters including, but not limited to, registrant and applicant files, investigative reports, examination material, and interoffice memoranda shall be the property cf the Supreme Court of Florida and the Board shall serve as the custodian of all such records.
The Board is authorized to disclose information relating to.an individual registrant, applicant or member of The Florida Bar, absent specific instructions from the Court to the contrary in the following situations:
a. The name, date of birth, Social Security number and date of application for placement in a national data bank operated by or on behalf of the National Conference of Bar Examiners.
b. Upon written request from The Florida Bar for information relating to disciplinary proceedings, reinstatement proceedings or unauthorized practice of law investigations, provided, however, that information received by the Board under the specific agreement of confidentiality or otherwise restricted by law shall not be disclosed.
c. Upon written request from the National Conference of Bar Examiners, or from foreign bar admitting agencies, foreign bar associations, or other similar agencies, when accompanied by an authorization and release duly executed by the person about whom such information is sought, provided, however, that information received by the Board under a specific agreement of confidentiality or otherwise restricted by law shall not be disclosed.
d. Upon written request from registrants or applicants for copies of documents previously filed by them or on their behalf with the Board with the written consent of the party submitting such documents, and copies *978 of any documents or exhibits formally introduced into the record at an investigative or formal hearing before the Board and the transcript of such hearings.
e. Upon service of a subpoena issued by a Federal or Florida Grand Jury, or Florida State Attorney only in connection with a felony investigation, provided, however, that information otherwise restricted by law shall not be disclosed.

f. Whenever any person intentionally and ivithout authority discloses confidential information maintained by the Board, such persons may be in contempt of the Board. The Board shall repoH to the Supreme Court of Florida the fact that such person is in contempt of the Board for such proceedings against such person as the Court may deem advisable.

RATIONALE:
Article I, Section 14 of the Rules provides for the confidentiality of “[a]ll information maintained by the Board in the discharge of those responsibilities delegated to it by the ... Court ... except as provided by these Rules or otherwise authorized by the Court.” The proposed rule amendment creates a new subsection under Section 14. The proposal is intended to emphasize and enforce the confidentiality of the Board’s records by establishing the sanction of contempt for a willful and unauthorized violation of such confidentiality.
Article III, section 2 as it will appear:
B. CHARACTER AND FITNESS REQUIREMENTS
Section 2.
a.Np person shall be recommended by the Florida Board of Bar Examiners to the Supreme Court of Florida for admission to the Florida Bar unless such person first produces satisfactory evidence to the Board of good moral character and an adequate knowledge of the standards and ideals of the profession and that such person is otherwise fit to take the oath and perform the obligations and responsibilities of an attorney.
b. The primary purposes of character and fitness screening before admission to The Florida Bar are to assure the protection of the public and safeguard the justice system. An attorney should be one whose record of conduct justifies the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them. A record manifesting a deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for denial of admission.
The revelation or discovery of any of the following may be treated as cause for further inquiry before the Board decides whether the applicant possesses the character and fitness to practice law:
(1) unlawful conduct;
(2) academic misconduct;
(3) making or procuring any false or misleading statement or omission of relevant information, including any false or misleading statement or omission on the Application for Admission to The Florida Bar, or any amendment, or in any testimony or sworn statement submitted to the Board;
(4) misconduct in employment;
(5) acts involving dishonesty, fraud, deceit or misrepresentation;
(6) abuse of legal process;
(7) neglect of financial responsibilities;
(8) neglect of professional obligations;
(9) violation of an order of a court;
(10) evidence of mental or emotional instability;
(11) evidence of drug or alcohol dependency;
(12) denial of admission to the bar in another jurisdiction on character and fitness grounds;
(13) disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction;
(14) any other conduct which reflects adversely upon the character or fitness of the applicant.
c. The Board shall determine whether the present character and fitness of an applicant qualify the applicant for admission. In *979 making this determination, the following factors should be considered in assigning weight and significance to prior conduct:
(1) the applicant’s age at the time of the conduct;
(2) the recency of the conduct;
(3) the reliability of the information concerning the conduct;
(4) the seriousness of the conduct;
(5) the factors underlying the conduct;
(6) the cumulative effect of the conduct or information;
(7) the evidence of rehabilitation;
(8) the applicant’s positive social contributions since the conduct;
(9) the applicant’s candor in the admissions process;
(10) the materiality of any omissions or misrepresentations.
No person shall be recommended for admission to The Florida Bar who has not reached the age of eighteen years.
d. An applicant may withdraw an application for admission to The Florida Bar at any time; provided, however, in such event the Board may continue its investigative and adjudicatory functions to conclusion.
e. Alternatively, an applicant may withdraw with prejudice an application for admission to The Florida Bar. The Board shall accept the withdrawal with prejudice and shall immediately dismiss its investigative and adjudicatory functions. An applicant who files a withdrawal with prejudice shall be permanently barred from filing a subsequent application for admission to The Florida Bar.
f. A person who has been disbarred from the practice of law in a foreign jurisdiction shall not be eligible to apply for admission to The Florida Bar or the Florida Bar Examination for a period of five years from the date of disbarment or such longer period set by the foreign jurisdiction for readmission to the foreign jurisdiction.
g. A person who has been suspended for disciplinary reasons from the practice of law in a foreign jurisdiction shall not be eligible to apply for admission to The Florida Bar or the Florida Bar Examination until expiration of the period of suspension.

h.A person who has been convicted of a felony shall not be eligible to apply for admission to The Florida Bar or the Florida Bar Examination until such person has had his or her civil rights restored.

i A person who is sewing a sentence of felony probation regardless of adjudication of guilt shall not be eligible to apply for admission to The Florida Bar or the Florida Bar Examination until termination of the period of probation.

RATIONALE:
The proposed rule amendment creates two new subsections. Subsection h. recites the rule of ineligibility in accordance with past decisions of the Supreme Court. See In re Florida Board of Bar Examiners, 183 So.2d 688 (Fla.1966); In re Florida Board of Bar Examiners, 341 So.2d 503 (Fla.1977).
Subsection i. provides that a person on probation will be ineligible to seek admission to The Florida Bar while serving a sentence of probation. This provision is applicable regardless of whether the person was formally adjudicated guilty. Upon termination of the probation, the person is allowed to pursue the application process.
Article III, section 3 as it will appear:
Section 3.
a. Prior to recommending an applicant for admission to practice the profession of law in Florida, the Florida Board of Bar Examiners shall conduct an investigation and otherwise inquire into and determine the character, fitness and general qualifications of every applicant. In every such investigation and inquiry, the Board may obtain such information as bears upon the character, fitness and general qualifications of the applicant and take and hear testimony, administer oaths and affirmations, and compel by subpoena the attendance of witnesses and the production of books, papers and documents. Any member of the Board may administer such oaths and affirmations. Such investigations and inquiries shall be informal, but they shall be thorough, with the object of ascertaining the truth. Technical rules of evi *980 dence need not be observed. Any investigative hearing for such purpose may be held by a division of the Board consisting of no fewer than three members of the Board. Each division shall record its proceedings and shall report its recommendations to the full Board.

An applicant who has been requested to appear for an investigative hearing by Board letter shall promptly respond to such letter. Failure to respond within 60 days shall result in termination of that application and shall require reapplication and payment of all fees as if the applicant were applying for the first time.

In cases where the facts are undisputed regarding an applicant’s prior conduct which bears adversely upon such person’s character and fitness for admission to the Bar, the Board may forgo an investigative hearing and proceed directly with the filing of Specifications as provided by Section b.(S) below.

b. Following an investigative hearing, the Board shall determine:
(1) That the applicant has established his or her qualifications as to character and fitness; or
(2) That fui’ther investigation into the applicant’s character and fitness is warranted; or
(3) That Specifications be filed charging the applicant with matters which if proven would preclude a favorable finding by the Board.
c. In lieu of the filing of Specifications pertaining to drug, alcohol or psychological problems, the Board in exceptional cases may enter into a Consent Order with the applicant. In a Consent Order, the Board is authorized to recommend to the Court for admission the applicant who has agreed to abide by specified terms and conditions upon admission to The Florida Bar. If the Court accepts the Board’s recommendation, the Order of admission shall be made as set out in Article VII, Section 1.
If the applicant is granted admission by the Court pursuant to a Consent Order, then the terms and conditions of the applicant’s admission shall be administered by The Florida Bar. The Board shall provide access to The Florida Bar of all information gathered by the Board on a conditionally admitted applicant except information received by the Board under a specific agreement of confidentiality or otherwise restricted by law. If the applicant shall fail to abide by the terms and conditions of admission, then The Florida Bar is authorized to institute such proceedings consistent with the Rules Regulating The Florida Bar as to revocation of the license issued to the applicant pursuant to the Consent Order. The Board shall be notified of any disciplinary proceedings and shall have access to all information relating to the administration of a conditional admission, except information received by The Florida Bar under a specific agreement of confidentiality or otherwise restricted by a law.
d. If Specifications are prepared and served upon an applicant, the applicant shall file an answer to the Specifications within 20 days from receipt of the Specifications. If an applicant fails to file an answer to the Specifications within such time or within any extension of that time allowed by the Board, the Specifications shall be deemed admitted and the Board shall enter findings of fact, finding the Specifications proven, and appropriate conclusions of law, which may include a recommendation that the applicant not be admitted to The Florida Bar.
e. After a timely answer to Specifications has been filed, the Board shall notify the applicant of the dates and locations available for the formal hearing on the Specifications and the applicant and the Board shall agree on a date and location for the hearing. If the applicant fails to agree on one of the dates and locations proposed by the Board, the Board shall set the date and location of the hearing. If the applicant, without good cause, fails to attend the formal hearing, the Specifications shall be deemed admitted and the Board shall enter findings of fact, finding the Specifications proven, and appropriate conclusions of law, which may include a recommendation that the applicant not be admitted to The Florida Bar.
f. Formal hearings held in response to Specifications shall be conducted before a quorum of the Board which shall consist of *981 not' less than five members. The formal hearing panel shall consist of members of the Board other than those who participated in the investigative hearing. This provision may be waived with the consent of the applicant. The weight to be given all testimony and exhibits received in evidence at a formal hearing shall be considered and determined by the Board. The Board is not bound by technical rules of evidence at a formal hearing. Following the conclusion of a formal hearing, the Board shall expeditiously make its findings of fact and conclusions of law which shall include one of the following:
(1) A recommendation that the applicant be admitted to The Florida Bar; or
(2) A recommendation that the applicant not be admitted to The Florida Bar; or
(3) After the filing of Specifications and, in lieu of a recommendation that the applicant not be admitted to The Florida Bar based upon drug, alcohol or psychological problems, the Board in exceptional cases may make a recommendation that the applicant be conditionally admitted to The Florida Bar upon such terms and conditions as specified by the Board. If the Court accepts the Board’s recommendation, then the terms and conditions of the applicant’s admission shall be administered by The Florida Bar as provided in Section 3.c. above; or
(4) A recommendation that the applicant’s admission to The Florida Bar be withheld for a specified period of time not ■ to exceed two years to allow the applicant to establish rehabilitation. At the end of the specified period of time, the Board shall recommend the applicant’s admission barring subsequent disclosure of matters adversely reflecting upon the applicant’s character or fitness.
The applicant shall be notified promptly by the Board of its findings of fact and recommendation, which action shall be subject to review by the Court as specified under Article III, Section 4.b.
g. If sufficient time has not passed since the occurrence of the behavior described in one or more of the Specifications sustained to permit the Board to determine whether the applicant has established his or her qualifications and what recommendations the Board would make to the Supreme Court of Florida, the Board may petition the Supreme Court of Florida for a reasonable extension of time for further investigation, not to exceed one year after the conclusion of the formal hearing. If an extension is granted, the Board may continue its investigation or otherwise acquire such additional information as is needed to permit it to make its final decision. The applicant shall be notified of any petition for extension and shall be given an opportunity to show cause why the extension should not be granted.
RATIONALE:
Applicants requested to appear for an investigative hearing are notified by Board letter sent by certified mail. Such letter includes a notice that the applicant must respond to the letter within 60 days or their application will be terminated. The 60-day period for responding has been the policy of the Board since 1976. The proposed rule amendment will formalize the Board’s policy by making it a specific provision of the rules.
The Board has adopted policies which require bar applicants who are disbarred lawyers or convicted felons to appear for a formal hearing due to the serious nature of their past misconduct. Occasionally, the facts of such cases are undisputed in that the applicants unequivocally admit the misconduct resulting in their disbarment or felony conviction. In such cases, the holding of an investigative hearing serves no investigative purpose and needlessly delays the processing of such applications. The proposed rule amendment would thus authorize the Board in such cases to forgo an investigative hearing and proceed directly to the filing of Specifications and the scheduling of a formal hearing.
Article III, section 4 as it will appear:
Section 4.
a. Any applicant who is dissatisfied with the Board’s recommendation concerning his or her character, fitness or general qualifications, may, within sixty (60) days after notice of the Board’s recommendation, file with the *982 Board a petition for reconsideration with a fee of $100.00 as specified under the provisions of Article V, Section 11. The petition must contain new and material evidence including, without-limitation to, evidence — of rehabilitation; which by due diligence could not have been produced at the formal hearing. Evidence of rehabilitation as provided by Article III, Section 4.e. of the Rules shall not be included in a petition for reconsideration, Only one such petition for reconsideration may be filed.
b. Any applicant or student registrant who is dissatisfied with the Board’s recommendation concerning such applicant’s or registrant’s character and fitness may file an appropriate petition with the Clerk of the Supreme Court of Florida, within a period of sixty (60) days after receipt of the Board’s recommendation. A copy of such petition shall be served upon the Executive Director of the Board. Unless otherwise required, the Board’s response shall be filed with the Supreme Court within 25 days after service of the petition. At the time of the filing of the Board’s response, the Executive Director shall place the record of the formal hearing with the Supreme Court, and the Court shall decide whether such applicant or student registrant meets the character and fitness requirements. Final action of the Court shall be duly entered in the minutes thereof.
c. An applicant who has been refused a favorable recommendation by the Board through the filing of Findings of Fact and Conclusions of Law which has not been reversed by the Supreme Court of Florida shall not be eligible for admission to any subsequent administration of any part of the Florida Bar Examination until such applicant receives a favorable recommendation by the Board or a favorable decision by the Supreme Court of Florida as to character and fitness; provided, however, that any such applicant who received a passing score on any part of the Florida Bar Examination administered prior to the filing of the Board’s Findings of Fact and Conclusions of Law shall be entitled to retain that passing status for the applicable part for the time period provided under Article VI, Section 9.
d. Any applicant who has been refused a favorable recommendation by the Board or any applicant or student registrant who has proceeded through the provisions of subsection b. above and is the recipient of final action by the Supreme Court of Florida either denying an applicant’s admission or finding a student registrant to be unfit for admission may, after two years from the date the Board delivered its adverse finding, file an appropriate petition with the Clerk of the Supreme Court of Florida in an attempt to show sufficient rehabilitation, to warrant a review of the Board’s findings or the reevaluation by the Court of its final action. In a case where the Board found that the applicant has made material misrepresentations or false statements in the application process, then the Board may within its discretion recommend that the applicant be disqualified from petitioning the Court for a period greater than two years up to five years. The Court shall fix all- investigative costs to be borne by the petitioner and remitted to the Florida Board of Bar Examiners, which Board shall serve as the Court’s investigative arm in such matters. In issuing a judgment adverse to an applicant or student registrant, the Court shall fix the date after which subsequent petitions may be filed with the Court.
e. Any applicant or student registrant who, in any formal hearing held in response to Specifications pursuant to Article III, Section 3 or in any proceeding held before the Board pursuant to Article II, Section 5 or Article III, Section 4.d., affirmatively asserts rehabilitation from prior conduct which bears adversely upon such person’s character and fitness for admission to the Bar shall be required to produce clear and convincing evidence of such rehabilitation including, but not limited to, the following elements:
(1) Strict compliance with the specific conditions of any disciplinary, judicial, administrative or other order, where applicable;
(2) Unimpeachable character and moral standing in the community;
(3) Good reputation for professional ability, where applicable;
*983 (4) Lack of malice and ill feeling toward those who by duty were compelled to bring about the disciplinary, judicial, administrative or other proceeding;
(5) Personal assurances, supported by corroborating evidence, of a desire and intention to conduct one’s self in an exemplary fashion in the future;
(6) Restitution of funds or property, where applicable;
(7) Positive action showing rehabilitation by such things as a person’s occupation, religion, community or civic service. Merely showing that an individual is now living as and doing those things he or she should have done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society. The requirement of positive action is appropriate for applicants for admission to the bar because service to one’s community is an implied obligation of members of the bar.
RATIONALE:
Recently, some applicants who have received an unfavorable recommendation by the Board following a formal hearing have attempted to present evidence of their rehabilitation in a petition for reconsideration. The proposed rule amendment clarifies the purpose of a petition for reconsideration. Such purpose is to provide applicants with the means by which to present new • and material evidence which is discovered after the formal hearing but within sixty days of notice of the Board’s recommendation.
Evidence of rehabilitation is properly excluded from a petition for reconsideration. Once the Board has made an unfavorable recommendation based upon findings of fact and conclusions of law, then evidence of rehabilitation should be presented only pursuant to the provisions of Article III, Section 4.d. of the Rules.
Article IV, section 2 as it will appear:
Section 2.
a. The Board shall not recommend to the Court for admission any applicant whose Application for Admission to The Florida Bar has been on file for more than three years without reinvestigation into the applicant’s character and fitness as necessary to bring the investigation to a current status. The applicant shall be required to file a new Application for Admission to The Florida Bar answering each item for the period of time from the filing of the original application to the date of the filing of the new application including current references and a fingerprint card which shall be accompanied by:
(1) a fee of $350.00 as provided by Article V, Section 3 of the Rules if the new application is filed within five years of filing the original application, or
(2) a fee as provided under Article V, Sections 1 or 2.a. if the new application is filed more than five years after filing the original application.
b. The Board shall not recommend to the Court for admission any applicant whose notice of successful completion of the Florida Bar Examination has been on file more than five years without reapplication for admission to the Florida Bar Examination and successful completion of all of the examination.
c. The Application for Admission to The Florida Bar must be vigorously pursued by the applicant. Failure to respond to inquiry from the Board unthin 90 days may result in termination of that application and require reapplication and payment of all fees as if the applicant ivere applying for the first time.
RATIONALE:
Currently, when applicants fail to pursue vigorously their applications and their applications are terminated by the Board, such applicants must also resubmit to the bar examination. The provision for re-examination has been objected to by some applicants as being unduly harsh. Furthermore, the Court recently approved an amendment to the Rules by which applicants who have not been admitted to The Florida Bar within five years of successfully completing the bar examination must retake the examination.
*984 Based upon the aforementioned factors, the Board recommends the deletion of the re-examination requirement from the termination provision. The proposed amendment also relocates the termination provision from the section on examinations (article VI, section 9.c.) to the section on applications. Article IV, section 5 as it will appear:
Section 5.
a. Each Application for Admission into the General Bar Examination, as an integral part thereof, must be accompanied by the following:
(1) A photograph, 2⅜” by 2⅜”, made within six months prior to the filing of the application;
(2) One (1) complete set of fingerprints taken and certified by an authorized law enforcement officer; and
(3) Such supporting documents or additional information as may be required on the forms supplied by the Board.
b. An Application for Admission to The Florida Bar must be filed not later than 180 days from the date of notice from the Board that success has been attained on all parts of the Florida Bar Examination. The Application for Admission to The Florida Bar shall not be deemed complete until all of the following items have been received by the Board:
(1) If the applicant is not a natural born citizen of the United States and indicates a name change at the time of naturalization, evidence of naturalization satisfactory to the Board that such name change occurred;
(2) If the applicant has been admitted to the practice of law in one or more jurisdictions, evidence satisfactory to the Board that the applicant is of good standing in such jurisdictions and a copy of the application for admission filed in each such jurisdiction;
(3) An authorization and release on a form supplied by the Board requesting and directing the inspection and furnishing to the Board, or any of its authorized representatives, all relevant documents, records or other information pertaining to the applicant and releasing any person, firm, officer, corporation, association, organization or institution from any and all liability in respect to such inspection or the furnishing of any such information;
(4) A Certificate of Dean (Form No. 3) certifying the applicant’s graduation from a full-time accredited law school, as provided under the provisions of Article III, Section l.fe,a.;
(5) An official — transcript of academic credit certifying -that-the- applicant has received an — academic Bachelor’s — Degree granted-on — the basis as specified — under Article III, Section — La.," which transcript must-come directly from-the awarding institution;
(6)(⅞) An official transcript of academic credit certifying that the applicant has received the degree of Bachelor of Laws or Doctor of Jurisprudence as specified under Article III, Section l.a., which transcript must come directly from the awarding institution;
(?}(⅜) Official transcripts from an-y-additional all post-secondary institutions attended, which transcript must come directly from the awarding institutions;
08X7) Supporting documents and other information as may be required in the forms supplied by the Board and other such documents as the Board may, in addition, from time to time reasonably require;

(8) An affidavit on a form supplied by the Board attesting that the applicant has read Chapter Rules of Professional Conduct, and Chapter 5, Rules Regulating Trust Accounts, of the Rules Regulating The Florida Bar;

(9) A certificate supplied by the agency administering the Multistate Professional Responsibility Exam (MPRE) bearing a successful score attained on the MPRE to be forwarded directly to the Florida Board of Bar Examiners by the designee of the National Conference of Bar . Examiners.
RATIONALE:
The Board submits that all individuals wishing to practice law in Florida should be familiar with the specific rules governing the *985 ethical and professional conduct of Florida attorneys. The proposed rule amendment, therefore, makes it mandatory for all applicants to read Chapter 4, Rules of Professional Conduct, and Chapter 5, Rules Regulating Trust Accounts, of the Rules Regulating The Florida Bar.
The introductory clause of Article V as it will appeal"
Fees are subject to change by published order of the Supreme Court of Florida. The following fees, none of which will be refunded, shall be paid by the applicant.
RATIONALE:
By published opinion issued October 2, 1991, the Supreme Court determined that increases in the fees to be charged to bar applicants should be made by formal order amending the Rules of the Supreme Court of Florida Relating to Admissions to the Bar. Amendments to Rules, 587 So.2d 1300 (Fla. 1991). The proposed rule amendment will provide notice to bar applicants of the Court’s authority to change the fees by published order.
Article VI, section 3 as it will appear.
Section 3.
a. The Board shall be responsible for the preparation, grading and conducting of written examinations, and members thereof shall be willing and available to discuss with applicants general problems regarding the purposes, policies and procedures of the examination. The written examinations shall be held in such places in the State as the Board may from time to time direct.
b. The Board may utilize the services of expert draftsmen drafters to prepare bar examination questions, either by arranging for the drafting services of qualified persons, including out-of-state law teachers, or by using the services of the National Conference of Bar Examiners or other national agency. Before an essay question is accepted for use on the General Bar Examination, whether drafted by the examiners or by expert draftsmen drafters, every point of law in the question shall be thoroughly briefed and the question shall be analyzed and approved by the Board. Every machine-scored item of Part A as herein defined must specify authority for the best response, and every such item and authority should be analyzed and approved by the Board preceding inclusion of the item on the General Bar Examination.
c.The Florida Bar Examination shall consist of a General Bar Examination and the Multistate Professional Responsibility Examination (MPRE).
The General Bar Examination shall be designated as Part A and Part B and shall be administered only within the State of Florida.
Part A shall be of six hours’ duration and shall be composed of six one-hour segments to be promulgated by the Florida Board of Bar Examiners.
One segment shall embrace the subject of Florida Rules of Civil and Criminal Procedure and the Florida Rules of Judicial Administration Rules 2.051, 2.060, and 2.160. The remaining five segments, each of which shall embrace no more than two subjects, shall be selected from the following subjects including their equitable aspects:
Florida Constitutional Law
Federal Constitutional Law
Business Entities Including Corporations and Partnerships
Wills and Administration of Estates
Trusts
Real Property
Evidence
Torts
Criminal Law
Contracts
Family Law
Chapter 4, Rules of Professional Conduct, and Chapter 5, Rules Regulating Trust Accounts, of the Rules Regulating The Florida Bar.
Part B shall consist of the Multistate Bar Examination (MBE) which is that examination offered to the several states by the National Conference of Bar Examiners and designated by that organization as the Multi- *986 state Bar Examination (MBE); provided, however, that scores achieved by applicants on the Multistate Bar Examination administered by an admitting jurisdiction other than the State of Florida shall not be transferred to or recognized by the Board. The Multi-state Professional Responsibility Examination (MPRE) shall be the examination offered to the several states by the National Conference of Bar Examiners designated by that organization as the Multistate Professional Responsibility Examination (MPRE), which examination is administered generally three times each year throughout the country at various colleges and universities selected by the National Conference of Bar Examiners and its designee.
RATIONALE:
The proposed rule changes to Article VI, section 3.b. are housekeeping in nature pertaining to the elimination of gender-specific language in the rules.
For Article VI, section 3.c., provisions regarding the disqualification of a trial judge were relocated by the Court from the rules of procedure to Rule 2.160 of the Rules of Judicial Administration. The proposed rule amendment would authorize the Board to continue to test on the issue of disqualification. Additionally, the proposal would authorize the Board to test on provisions of the rules of judicial administration concerning public access to judicial records (Rule 2.051) and attorneys (Rule 2.060) which provisions contain significant procedural information for individuals wishing to practice law in Florida.
Article VI, section 9 as it will appear:
Section 9.
a.An applicant must successfully complete the General Bar Examination and the Multistate Professional Responsibility Examination (MPRE) within 25 months of the date of the administration of any part of the examination which is passed. Should an applicant fail to pass all parts within 25 months of first passing any part, passing score(s) of individual parts older than 25 months are deleted.
b.The Application for Admission to The Florida Bar must be filed no later than 180 days from the date of notice that success has been attained on both the General Bar Examination and the Multistate Professional Responsibility Examination (MPRE). Failure to comply with such filing deadlines will result in required reapplication for admission to the Florida Bar Examination and successful completion of all of the examination.
⅜ — The Application for — Admission to The Florida Bar musL-be-vigorously pursued-by the applicant. — Failure to respond -to-inquiry from the Board within 90 days-may-result in termination- of that application-and require re-examination and-payment of all fees-as if the applicant -was applying for-the first time.
RATIONALE:
Deletes the termination provision (section c.), which has been revised and moved to article IV, section 2.c.
Article VII, section 1 as it will appear:
Section 1. Every applicant who has complied with the requirements of the applicable rules for admission into the Florida Bar Examination, who has attained passing scores on the examination required, who has met the requirements as to character and fitness, and who has:
(a) Furnished to the Board satisfactory evidence that an accredited law school as specified in Article III, Section l.te,»., has conferred upon the applicant the degree of Bachelor of Laws or Doctor of Jurisprudence and who has complied with all other requirements for admission to practice the profession of law;
(b) Or complied with all requirements except the conferral of the first degree in law as set out in Article III, Section l.b,a., but who has been declared by the Board as being fully qualified under the aforementioned Article III, Section 1.6=6.; shall be recommended by the Florida Board of Bar Examiners to the Supreme Court of Florida for admission to The Florida Bar. If the Court is satisfied as to the qualifications of the applicant so recommended, an Order of admission shall be made and entered in the minutes of the Court, and it shall designate the manner in which all applicants will take *987 the oath. Two induction ceremonies shall be scheduled each year at which the oath shall be administered by the Chief Justice of the Court or a Justice thereof before the Court in formal session or by the Chief Judge of a District Court of Appeal or a Judge thereof before a District Court of Appeal in formal session. Any applicant who chooses not to attend such formal session may take the oath before any resident Circuit Judge or before such other official authorized to administer oaths. All applicants shall present themselves for such administration of the oath not later than 90 days from the date of notification of eligibility for admission by the Clerk of the Supreme Court of Florida. No certificate of admission to practice shall be issued until the oath of such applicant has been filed in the-office of the - Clerk — of the- Supreme Court tmth the Board and the date of the oath has been forwarded by the Board to the Supreme Court of Florida and The Floñda Bar. The Clerk shall maintain a permanent register of all persons so admitted.
RATIONALE:
The established practice is for bar applicants to submit their executed oaths to the Board and for the Board to then advise the Court and The Florida Bar of the date of execution for each oath. The executed oaths are never actually filed in the office of the Clerk of the Supreme Court. The proposed rules amendment conforms the language of the rule provision with the actual practice.

. The Board investigates an applicant’s credit histoiy as part of the Bar admissions process. "[N]eglect of financial responsibilities” is one of the factors bearing on the fitness to practice law. See Fla.Bar Admiss.R., art. Ill, § 2.b.(7).

.Florida Bar Admission Rule article VII, section 2 provides:
If, within 12 months of admission of an applicant to The Florida Bar, the Board determines that a material misstatement or material omission in the application process of such applicant may have occurred, then the Board may conduct an investigation and hold hearings. After investigation and hearings, the Board may make findings and recommendations as to revocation of any license issued to such applicant and shall file any such findings with the Supreme Court of Florida for final determination by the Court.

. The Board also asks use to adopt several "housekeeping" rules to go along with its proposal to eliminate the Multistate Professional Responsibility Examination (MPRE) for some applicants. Because we do not adopt the Board's proposed article IV, section 5.b.(9) and (10), we have no need to adopt these rules: article IV, section l.b.; article IV, section 5.b.; article IV, section 8; article VI, section 1; article VI, section 7.C.; and article VI, section 9.a.-b.

. The Board’s proposal would exempt Florida Bar applicants from taking the MPRE if they produce an official transcript that shows they *975 have taken and passed an ethics course of at least two hours at an American Bar Association-approved law school.

. On our own motion we renumber portions of article IV, section 5.b. to reflect administrative changes the Board made as a result of our decision in Florida Board of Bar Examiners re Amendment to Rules, 603 So.2d 1160 (Fla. 1992). In addition, on our own motion we adopt additional housekeeping changes to article VII, sections 1(a) and (b).