894 So.2d 1 (2004)
FLORIDA BOARD OF BAR EXAMINERS re Roderick Maurice CHAVEZ.
No. SC02-1935.
Supreme Court of Florida.
March 11, 2004.
As Revised on Denial of Rehearing February 3, 2005.
Michael J. Keane, Chair, Eleanor Mitchell Hunter, Executive Director, and Thomas A. Pobjecky, General Counsel, Tallahassee, FL, for Florida Board of Bar Examiners, Petitioner.
Roderick Maurice Chavez, pro se, for Respondent.
PER CURIAM.
The Florida Board of Bar Examiners ("Board") has filed a report recommending that we revoke the license of attorney Roderick Maurice Chavez to practice law in the State of Florida. Chavez has petitioned this Court to review the Board's recommendations. We have jurisdiction. See art. V, § 15, Fla. Const.

FACTS
Prior to Chavez's admission to The Florida Bar ("Bar"), certain items of information that reflected adversely on Chavez's character and fitness came to the Board's attention during the Board's background investigation. Among the Board's concerns was Chavez's delinquency in making child support payments and the arrearage he had accrued from such delinquency. The Board informed Chavez that a final determination on his application would be made upon the receipt of several items, including a sworn amendment to the Bar application that included (1) plans for repayment of the child support arrearages and a promise to continue paying the court-ordered child support, (2) a commitment to meet the obligations as set out in his repayment plan, and (3) a written acknowledgment that failure to adhere to the repayment plan could result in revocation of Chavez's license to practice law.
In a letter dated September 5, 2001, Chavez amended his application with the statements required by the Board.[1] In addition, in the amendment Chavez agreed *2 to the Board's request to provide continuing reports on his compliance with the repayment plan. After filing the amendment to his application, Chavez was conditionally admitted to the Bar on September 17, 2001. The admission was specifically predicated upon the sworn amendment, the absence of which would have resulted in a denial of admission to the Bar.
On March 19, 2003, the Board served Allegations of Misstatement upon Chavez. The Allegations of Misstatement alleged that Chavez's September 5, 2001, amendment was false. The Allegations further alleged that since his admission to the Bar, Chavez failed to make any payments toward the child support arrearage and, because he continued to be delinquent in paying his ongoing child support obligation, the arrearage had actually increased during the time he had been a member of the Bar. In his answer to the Board's Allegations of Misstatement, Chavez argued that the amendment to his application was not false and that the amendment was a "plan," rather than an obligation.
A formal hearing was held on May 9, 2003, after which the Board issued its Findings of Fact, Conclusions of Law and Recommendation. In its Findings of Fact, the Board found that Chavez had never once, during the twenty months of his admission, complied with his repayment plan because no payments toward his child support arrearage were ever made. Moreover, the Board found that Chavez failed to meet his continuing obligation to pay the underlying child support during several months, including the first two months following his admission to the Bar.[2]
Based on this evidence, the Board found that Chavez had falsified his Bar application as alleged and recommended that Chavez's license be revoked under the provisions of Rule 5-14 of the Rules of the Supreme Court Relating to Admissions to the Bar. Chavez requests that the Court review the Board's findings and impose a lesser sanction.

ANALYSIS
Rule 5-14 of the Rules of the Supreme Court Relating to Admissions to the Florida Bar provides:
If, within 12 months of admission of an applicant to The Florida Bar, the Board determines that a material misstatement or material omission in the application process of such applicant may have occurred, then the Board may conduct an investigation and hold hearings. After investigation and hearings, the Board may make findings and recommendations as to revocation of any license issued to such applicant and shall file any such findings with the Supreme Court of Florida for final determination by the Court.
Fla. Bar Admiss. R. 5-14.
Chavez was conditionally admitted to the Bar pursuant to a process referred to as a "credit string." In Florida Board of Bar Examiners re Amendment of Rules, 645 So.2d 972 (Fla.1994), we explained that conditional admission pursuant to "credit strings" should rarely be used, and we specifically declined to amend the rules of admission to allow applicants with serious financial problems to take part in the conditional admission program which was established and in place *3 primarily for applicants with drug, alcohol, or psychological problems. See id. at 974. We also explained why admissions pursuant to the "credit string" process were not encouraged:
We do not think conditional admission is appropriate for applicants with serious financial problems. Debt is not an illness or a disease. It is not clear that the rehabilitative function of conditional admissions would work for those applicants with financial problems. To allow conditional admission for financial difficulties would render the supervising agency into little more than a credit bureau. In addition, expanding conditional admissions would add more people to the program and would create more regulatory problems for the agency that supervises these admittees.
....
... [O]ver the last five years the Board has used a "credit string" that has been used for about thirty-five applicants whose debts are neither clearly legitimate nor fraudulent. According to the Board's counsel, applicants must acknowledge their debts and swear to repay them. They are required to report back to the Board at predetermined intervals for one year. Under the Board's rules, should an applicant fail to adhere to the sworn document, he or she may be investigated for making material misstatements.
To expand the "credit string" and grant conditional admission to applicants with serious financial problems creates the risk of giving creditors leverage over a Bar applicant for an indefinite length of time. We believe the better practice is for the Board to continue to distinguish between someone who cannot properly discharge his or her financial duties from someone who legitimately incurred debt or is simply poor. If an applicant presents a threat to the public because of financial difficulties, he or she should not be admitted to the Bar. Otherwise, the Bar can monitor attorneys and take action if financial problems interfere with the ability to ethically represent clients. The Board should continue to use the "credit string" sparingly.

Id. (footnote omitted) (emphasis added).
Chavez does not challenge any of the factual findings with regard to his noncompliance with the amendment to his bar application.[3] Rather, he argues that his amendment was merely a plan for the future and the arrearage was not paid because his plan did not succeed. He also argues that based on the wording of Rule 5-14, it would have been impossible for his plan to repay the child support not to be deemed a misstatement unless he had succeeded at complying with the repayment plan.
We agree with the Board's rejection of these arguments. Under the circumstances present in this case, the Board was most lenient in even recommending Chavez for conditional admission in the first place. Chavez had considerable child support arrearages at the time of his application, and Chavez's conditional admission was predicated exclusively upon promised conduct. The absence of this promise should have resulted in an absolute denial of admission to the Bar. In fact, if Chavez had initially been denied admission, this *4 denial would have been consistent with decisions from this Court because debts associated with failure to pay child support are distinguishable from other types of debt. See Gibson v. Bennett, 561 So.2d 565, 570 (Fla.1990) (explaining that support obligations are not debt, but "a personal duty, not only to a former spouse or child, but to society generally"). Indeed, this Court has denied admission to Bar applicants in cases where the applicants have had child support arrearages because such arrearages can often reflect an applicant's lack of financial responsibility, a disregard for the applicant's moral and legal obligation to his or her children, and, because child support is court-ordered, a lack of respect for the law in general. See Fla. Bd. of Bar Exam'rs re J.A.B, 762 So.2d 518, 520 (Fla.2000) (stating applicant's "failure to pay child support shows a lack of respect for the rights of his daughter, the rights of his ex-wife and a lack of respect for the law and for the court order itself"); Fla. Bd. of Bar Exam'rs re M.A.R., 755 So.2d 89, 91 (Fla.2000) (same); Fla. Bd. of Bar Exam'rs re E.R.M., 630 So.2d 1046, 1047-48 (Fla.1994) (holding that there was competent and substantial evidence supporting Board's findings, where the Board found, in part, that applicant's failure to pay child support "exhibited a disregard for his moral and legal obligations to his children, lack of financial responsibility, and a lack of respect for the court and legal system"). We reiterate our previous admonition that these "credit string" admissions should be sparingly used.
Even presuming that Chavez's initial conditional admission was appropriate, Chavez's subsequent behavior provides a glaring example as to why conditional credit string admissions should be discouraged. Despite having never once complied with his promise to make payments on the arrearage, Chavez now argues that he should nonetheless be entitled to remain a member of the Bar because the payment plan he promised to follow was merely an aspirational goal and he had every intention of complying with the plan when he made his September 5, 2001, amendment to his application. However, Chavez's argument strains credulity when the facts are examined. Immediately after making the sworn statement in September of 2001 that he would begin paying off the arrearage in October of 2001, Chavez failed to make any child support payment in either October or November of 2001, let alone a payment toward the arrearage. In other words, one month after entering into the sworn repayment plan, he had already defaulted.
Moreover, even in the months during which Chavez did pay child support, he did not once make any payment toward the arrearage before the Board initiated these proceedings. As of the date of his formal hearing in May of 2003, he still had not made a single payment toward the arrearage and had not made any child support payments since November of 2002. When questioned at the hearing, Chavez stated that it had not occurred to him to consider making partial payments.
Therefore, we are faced with a record that shows that Chavez not only failed to comply with the repayment plan  he failed to even make a good faith effort to comply with the repayment plan and continued to fail to make child support payments, allowing the total arrearage to increase.[4] We agree with the Board's conclusion that Chavez's amendment was a material misstatement *5 when he made it in September of 2001. Additionally, Chavez was specifically informed that his admission to the Bar was conditional and his failure to comply with the plan might result in the revocation of his license pursuant to Rule 5-14. Under these circumstances, we refuse to reward Chavez's continued disregard for his children, the custodial parent, the court system, court judgments, and his sworn promise to the Board and this Court. Accordingly, we approve the Board's findings and recommendations in all respects. Roderick Maurice Chavez's conditional license to practice law is hereby revoked.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] In the September 5, 2001, amendment to his application, Chavez represented that he would begin paying his arrearage the next month, in October 2001, and he would have the arrearage paid off by August 2002.
[2] In finding that the amendment was false, the Board also was persuaded by Chavez's admission during the formal hearing that a number of individuals had informed him that the first year of operating a law firm would be difficult. The Board noted that Chavez's amendment to his application did not represent that the first year following his admission would be financially difficult.
[3] We conclude that the Board's factual findings are supported by competent and substantial evidence, including those findings that the Board found based on circumstantial evidence. See Fla. Bd. of Bar Exam'rs re R.L.W., 793 So.2d 918, 924 (Fla. 2001) (stating that the Board may find that facts are proven by circumstantial evidence where the inference of the fact preponderates over other inferences).
[4] A recent Maryland court order that R.M.C. attached to his filing reflects an arrearage amount that stands at $16,961.50.